UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELE VALVO,

                                                    Plaintiff,

              -against-

THE DEPARTMENT OF EDUCATION OF THE CITY
OF NEW YORK, and THE UNITED FEDERATION OF
TEACHERS,

                                                    Defendants.

## DEFENDANT NEW YORK CITY DEPARTMENT OF EDUCATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

**JAMES E. JOHNSON**
*Corporation Counsel of the City of New York*
Attorney for Defendant Department of Education
100 Church Street, Room 2-109e
New York, New York 10007-2601

*Of Counsel:*    Kimberly E. Wilkens

*Tel:* (212) 356-4083
*Email:* kwilkens@law.nyc.gov

Matter No. 2019-072571

# TABLE OF CONTENTS

PRELIMINARY STATEMENT                                                    1

STATEMENT OF FACTS                                                       4


POINT I:

ALL CONSTITUTIONAL CLAIMS MUST BE DISMISSED                             10

    A.  Plaintiff Did Not Avail Herself of Post-Deprivation Review Mechanisms.    10

    B.  Plaintiff as an Untenured Employee Does Not Have a Cognizable Property
        Interest in Her Job and the Process Plaintiff Received More than Satisfies
        Due Process Clause Minima.                                          11

    C.  Plaintiff's Substantive Due Process Claim Fails.                    16


POINT II:

PLAINTIFF'S NEGLIGENCE, PRIMA FACIE TORT, CIVIL RICO,
AND ALLEGED VIOLATIONS OF NEW YORK STATE
AND NEW YORK CITY HUMAN RIGHTS LAW CLAIMS FAIL                          17


    A.  Plaintiff Failed to Plead Negligence, Prima Facie Tort, and Violations
        of NYCHRL and NYSHRL in Her Notice of Claim and is Now Precluded
        from Pleading Such Claims.                                          17

    B.  Plaintiff's Negligence Claim Fails as Plaintiff Cannot Even Allege a Special
        Duty on the Part of the Defendant DOE and/or Because a Negligence Claim
        Cannot Stand Against a Municipal Entity.                            18

    C.  Plaintiff Fails to State a Claim of Prima Facie Tort.               19

    D.  The DOE Lacks Capacity to Enter into a Civil RICO Conspiracy,
        Therefore, Plaintiff's Claim of Civil Rico Fails.                   20

    E.  Plaintiff Fails to State a Viable Claim for Age Discrimination
        under the New York State Human Rights Law and New York City Human Rights Law.    23

CONCLUSION                                                             25

# C<span style="font-variant:small-caps">ASES</span>

<u>ATI, Inc. v. Ruder & Finn, Inc.</u>, 42 N.Y.2d 454, 458 (1977)----------------------------------------------------------- 20

<u>Belsky v. Lowenthal</u>, 405 N.Y.S.2d 62, 65 (1st Dep't 1978)----------------------------------------------------------- 20

<u>Bermudez v. City of N.Y.</u>, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011) ---------------------------------------------- 24

<u>Billard v. Rockwell International</u>, 683 F.2d 51, 57 (2d Cir. 1982) --------------------------------------------------- 22

<u>Burns Jackson Miller Summit & Spitzer v. Lindner</u>, 59 N.Y.2d 314, 333 (N.Y. 1983) ------------------------------- 20

<u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 313 (2d Cir. 2002) ------------------------------------------------ 11

<u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532 (1985)---------------------------------------------------------- 13

<u>Cosmas v. Hassett</u>, 886 F.2d 8, 11 (2d Cir. 1989)--------------------------------------------------------------------- 22

<u>Costello v. Fairfield</u>, 811 F.2d 782, 784 (2d Cir. 1987) --------------------------------------------------------------- 15

<u>DeFalco v. Bernas</u>, 244 F.3d 286, 306 (2nd Cir. 2001) --------------------------------------------------------------- 21

<u>Frooks v. Town of Cortlandt</u>, 997 F.Supp. 438, 457 (S.D.N.Y. 1998) -------------------------------------------- 20, 22

<u>Giglio v. Dunn</u>, 732 F.2d 1133 (2d Cir. 1984)------------------------------------------------------------------------- 12

<u>Global Vlie Limited v. Great Central Exploration,</u> 288 F. Supp. 2d 473, 478 (S.D.N.Y. 2003)------------------------ 22

<u>Gonzales v. City of New York</u>, 135 F.Supp. 2d 385 (E.D.N.Y. 2001) ----------------------------------------------- 15

<u>Green v. Dep't of Educ.</u>, 2019 U.S. Dist. LEXIS 127545 (Sept. 23, 2019)-------------------------------------------- 16

<u>Green v. Dep't of Education</u>, 2019 U.S. Dist. LEXIS 127545, at *33 (S.D.N.Y July 31, 2019)----------------------- 16

<u>Grillo v. N.Y. City Transit Auth.</u>, 291 F.3d 231, 234 (2d Cir. 2002) ------------------------------------------------- 11

<u>Hedges v. Town of Madison</u>, 456 F. App'x 22, 23 (2d Cir. 2012) ---------------------------------------------------- 23

<u>Hellenic Am. Neighborhood Action Comm. v. City of New York</u>, 101 F.3d 877, 880 (2d Cir. 1996) ---------------- 10

<u>Henvill v. Metro. Transp. Auth.</u>, 2017 N.Y. Slip Op 31559[U], *15 (Sup. Ct., N.Y. County 2017) -------------------- 23

<u>Hubbard</u>, 09 Civ. 10265 (HB), 2010 U.S. Dist. LEXIS 46550, at *13-14, (S.D.N.Y. May 12, 2010) ----------------- 15

<u>Jenkins v. Sea-Land Serv.</u>, 1994 U.S. Dist. LEXIS 11477, at *12 (S.D.N.Y. Aug. 17, 1994)---------------------------- 25

<u>Kairam v. W. Side GI, L.L.C.</u>, No. 19-447-cv, 2019 U.S. App. LEXIS 36348, at *6 (2d Cir. Dec. 9, 2019)---------- 23

<u>Kelly v. Howard I. Shapiro & Assoc. Consulting Eng'rs, P.C.</u>, 716 F.3d 10, 14 (2d Cir. 2013)------------------------ 23

<u>Lauer v. City of New York</u>, 95 N.Y.2d 95, 99 (2000)----------------------------------------------------------------- 19

<u>Littlejohn v. City of New York</u>, 795 F.3d 297, 311 (2d Cir. 2015) --------------------------------------------------- 23

<u>Marcus v. Leviton Mfg. Co.</u>, 661 F. App'x 29, 33 (2d Cir. 2016)----------------------------------------------------- 23

<u>Marino v. Ameruso</u>, 837 F.2d 45 (2d Cir. 1988) --------------------------------------------------------------------- 12

<u>Mazzilli v. New York</u>, 154 A.D.2d 355, 357 (2d Dept. 1989) --------------------------------------------------------- 17

<u>McKenzie v. Dow Jones & Co.</u>, 355 F. App'x 533, 536 (2d Cir. 2009) ------------------------------------------- 19, 20

<u>McLean v. City of New York</u>, 12 N.Y.3d 194, 199 (2009)------------------------------------------------------------- 19

<u>Narumanchi v. Bd. of Trustees of Conn. State Univ.</u>, 850 F.2d 70, 72 (2d Cir. 1988)------------------------------- 15

<u>Narumanchi v. Connecticut State Univ.</u>, 850 F.2d 70, 72 (2d Cir. 1988) --------------------------------------------- 12

<u>O'Connor v. Pierson</u>, 426 F.3d 187, 198-99 (2d Cir. 2005) ----------------------------------------------------------- 15

<u>Ortiz v. Std. & Poor's</u>, No. 10 Civ. 8490 (NRB), 2011 U.S. Dist. LEXIS 99122, at *15-16 (S.D.N.Y. Aug. 26, 2011) ----------------------------------------------------------------------------------------------------------------------- 24

<u>Pelaez v. Seide</u>, 2 N.Y.3d 186, 199-200 (2004) -------------------------------------------------- 19

<u>Rosendale v. Mahoney</u>, No. 11-3053, 2012 U.S. App. LEXIS 19206, at *4 (2d Cir. Sep. 13, 2012) ------------------ 12

<u>Scott v. City of New York</u>, 40 A.D.3d 408 (1ˢᵗ Dep't 2007) ------------------------------------------------- 18

<u>See Faghri v. Univ. of Conn.</u>, 621 F.3d 92, 10 (2d Cir. 2010) ---------------------------------------------- 12

<u>Segal v. Gordon</u>, 467 F.2d 602, 608 (2d Cir. 1972)------------------------------------------------------ 22

<u>Velez v. Levy</u>, 401 F.3d 75, 87 (2d Cir. 2005)------------------------------------------------------------- 16

<u>Williams v. NY City Hous. Auth.</u>, 61 A.D.3d 62, 78 (1st Dep't 2009)---------------------------------------- 24

<u>Wooten-Francis v. City of New York</u>, 2013 U.S. Dist. LEXIS 178458, at *16 (E.D.N.Y. Dec. 19, 2013) ----------- 12

## Sᴛᴀᴛᴜᴛᴇs & Oᴛʜᴇʀ Aᴜᴛʜᴏʀɪᴛɪᴇs

18 U.S.C. § 1961 Racketeer Influenced and Corruption Organizations Act ("RICO") -------------------------------------- 1

42 U.S.C § 1983---------------------------------------------------------------------------------------------------- 1, 11

Educ. Law § 3813(1) --------------------------------------------------------------------------------------------- 23

Fourteenth Amendment --------------------------------------------------------------------------------------- 10, 15

General Municipality Law § 50-e ------------------------------------------------------------------------------ 17, 23

New York City Administrative Code § 8-107(a) ---------------------------------------------------------------------- 23

New York Education Law § 3813(1) ------------------------------------------------------------------------------- 17

New York Executive Law § 296(1)(a) ------------------------------------------------------------------------------ 23

## PRELIMINARY STATEMENT

Plaintiff was a Paraprofessional employed by the New York City Department of Education ("DOE" or "Defendant DOE").[1]   Plaintiff was terminated on February 13, 2018 following substantiated findings by the DOE's Office of Special Investigations ("OSI") that on January 25, 2018, Plaintiff engaged in the serious act of corporal punishment against her student. Specifically, OSI's investigation determined that Plaintiff, inter alia, screamed at a mostly non-verbal student with autism, pulled him by his arm, forcibly pushed him into a seat, and continued to belittle and embarrass him by yelling and screaming at him in an aggressive and angry tone.

Plaintiff claims that the DOE improperly terminated Plaintiff from her position and placed her name on a "problem code" list.   As a result, Plaintiff alleges she must bear the "stigma" forever, and therefore seeks both damages and declaratory relief for the purportedly unconstitutional and discriminatory acts of the Defendant DOE.

Plaintiff commenced this action under 42 U.S.C § 1983, 18 U.S.C. § 1961 Racketeer Influenced and Corruption Organizations Act ("RICO"), the New York State Human Rights Law and New York City Human Rights Law ("SHRL" and "CHRL," respectively) alleging that her termination and the subsequent removal of her license was based on discrimination because of her age, and violated her procedural Due Process Clause rights under the 14th Amendment. Plaintiff also alleges claims of negligence and prima facie tort by the Defendant DOE.[2] Furthermore, Plaintiff attempts to raise a "stigma plus" claim alleging an additional loss of reputation.   Plaintiff, however, never commenced a special proceeding under section 7803(3) of

---

[1] DOE is, formally, the Board of Education of the City School District of the City of New York.
[2] Plaintiff also alleges claims of breach of contract against co-Defendant United Federation of Teachers ("UFT"). See Am. Compl. ¶¶ 62-65. Because this claim is not issued against the Defendant DOE, the claim will not be addressed herein.

Article 78 of the New York Civil Practice Law and Rules ("CPLR") surrounding her termination.

Defendant DOE now moves to dismiss Plaintiff's Amended Complaint against the DOE in its entirety, pursuant to Federal Rule 12(b)(6), because Plaintiff fails to state a claim. First, Plaintiff's procedural Due Process Clause claim, and her stigma plus claim, must fail because Plaintiff failed to avail herself of all available post-deprivation remedies, specifically an Article 78 proceeding.

Further, to the extent that Plaintiff's Amended Complaint can be read to allege a Substantive Due Process claim, such a claim must also be dismissed. Plaintiff was an untenured employee, as such, Plaintiff lacks a cognizable right to her employment protected under the Substantive Due Process Clause. Plaintiff's Constitutional claims must also fail, as the pre-deprivation and post-deprivation process available to and utilized by the Plaintiff under the collective bargaining agreement ("CBA") between DOE and Plaintiff's union, the Co-Defendant United Federation of Teachers ("UFT"), provided all the process Plaintiff was due.

As to Plaintiff's remaining claims of negligence, prima facie tort, RICO, and SHRL and CHRL violations, these claims against the Defendant DOE must also be dismissed, for any of multiple reasons:

First, as a threshold issue with respect to all of Plaintiff's State Law claims, including alleged violations of SHRL and CHRL, Plaintiff's claims must be dismissed as Plaintiff failed to file a timely Notice of Claim alleging any of these claims against the Defendant DOE. Additionally, or alternatively, these claims must fail as Plaintiff failed to allege with particularly any of these claims against the Defendant DOE.

Specifically, with respect to Plaintiff's claims of negligence and prima facie tort against the Defendant DOE, Plaintiff failed to even allege two of the essential elements necessary to plead a cause of action, i.e., a specialized duty owed by Defendant DOE to Plaintiff and/or allegations of malice.

Next, with respect to Plaintiff's RICO claim, this claim also fails. First, as a matter of law, the Defendant DOE, as a governmental entity, lacks the requisite mens rea to support such a claim. Second, the Amended Complaint fails to plead this claim with the particularity required by Rule 9 of the Federal Rules of Civil Procedure. Thus, Plaintiff's RICO claim should be dismissed.

Lastly, with respect to the purported violations of SHRL and CHRL alleged by Plaintiff, Plaintiff's Amended Complaint is fatally devoid of any factual allegations supporting Plaintiff's claims of discrimination based on her age. In fact, Plaintiff does not even provide her age, and only mentions the word "age" a single time in the entirety of her Amended Complaint, specifically when outlining her alleged Fifth Cause of Action, which is purportedly based on "collusion because of her age and seniority."

In sum, because Plaintiff received all the process she was due, failed to state a claim of stigma plus, and failed to assert cognizable claims of negligence, prima facie tort, violations of RICO, and/or discrimination in violation of SHRL and CHRL on the part of the Defendant DOE, Plaintiff's Amended Complaint as against the DOE must be dismissed. In addition, because Plaintiff has already had the opportunity to amend her complaint, her claims should be dismissed with prejudice.

## **STATEMENT OF FACTS**[3]

Plaintiff was employed by Defendant DOE as a paraprofessional from 2002 until her termination in February of 2018.  See Amended Complaint ("Am. Compl.") ¶ 14.  In January of 2018, Plaintiff was employed at P.S. 23.  See Am. Compl. ¶ 15.  On January 26, 2018[4], Plaintiff was suspended from her position as a result of serious allegations: specifically, that Plaintiff inflicted corporal punishment upon an autistic child on January 25, 2018. See Am. Compl. ¶ ¶ 17, 18, 19, 24. The record shows that an investigation by the DOE's Office of Special Investigations ("OSI") revealed that Plaintiff yelled and screamed at a mostly non-verbal student with autism, pulled him by his arm, forcibly pushed him into a seat at a lunch table, shoved his legs under the table and continued to belittle and embarrass him by yelling and screaming at him in an aggressive and angry tone.  See Plaintiff's Termination Letter, annexed to the Wilkens' Declaration ("Wilkens' Decl.") as Exhibit ("Exh.") "A." Prior to Plaintiff's suspension, she was called into the office of P.S. 23's Principal, Paul J. Proscia, ("Principal Proscia"), given a letter notifying her of her suspension without pay, and informed of an investigation into the serious accusations being brought against Plaintiff.  See Am. Compl. ¶ 17.

---

[3] This statement of facts is derived from the material factual allegations set forth in Plaintiff's Amended Complaint dated March 10, 2020.  Those facts, but not the conclusions, will be assumed to be true solely for the purpose of this Motion to Dismiss.  Where appropriate, the Statement of Facts has been supplemented by the exhibits Defendant DOE annexes to the supporting Declaration of Assistant Corporation Counsel Kimberly E. Wilkens, dated April 30, 2020 ("Wilkens' Decl.").  The Court may consider these exhibits on this motion because the Court may consider "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) [certain] public disclosure documents required by law to be . . . filed . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." Weiss v. Inc. Vill. of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011)(internal quotation marks omitted). All documents attached to the Defendant DOE's motion are "integral" to the Complaint, were in plaintiff's possession and relied upon in framing the Complaint, and/or are public documents subject to judicial notice.  Please note, certain redactions have been made on these exhibits to protect privacy interests of the Plaintiff, as well as non-parties to this litigation.

[4] Because Plaintiff did not receive this hand-delivered letter of suspension until the afternoon on Friday, January 26, 2018, Plaintiff's effective suspension date was administratively changed to Monday, January 29, 2018, in order to afford Plaintiff pay for the entire workday of Friday.  This change reflected the first date Plaintiff did not report to work during her suspension.  See Plaintiff's Step 1 Suspension Without Pay Grievance Decision, annexed to Wilkens' Decl. as Exh. "B."

On February 2, 2018, Plaintiff, while accompanied by Union Representative John Torres, met with Principal Proscia, and Assistant Principal Renee Mazza for a disciplinary conference[5] to discuss the allegations against Plaintiff.  <u>See</u> Plaintiff's Termination Letter, Exh. "A."  <u>See also</u> Am. Compl. ¶ 21. At the conference, Plaintiff was informed of and given an opportunity to hear the specific allegations made against her. <u>See</u> Plaintiff's Termination Letter, Exh. "A." The record shows that Plaintiff was advised by her Union representative during this conference. <u>See id</u>. Following this conference, a review of all allegations, and the conclusion of the investigation by OSI substantiating the allegations against Plaintiff, Plaintiff was ultimately terminated on February, 13, 2018, based on, <u>inter alia</u>, her violations of Chancellor's Regulations A-420 and A-421. <u>See id</u>.

Pursuant to the applicable collective bargaining agreement ("CBA") between the DOE and Plaintiff's union, co-defendant United Federation of Teachers ("UFT"), Plaintiff initiated grievance procedures challenging her suspension, and later, her termination.  <u>See generally</u> Am. Compl. ¶ ¶ 20 – 26. <u>See also</u> DOE's CBA, annexed to the Wilkens' Decl. as Exh. "C."  Under the applicable CBA, Article 23, a Paraprofessional employee, such as Plaintiff, may initiate a grievance.  <u>See</u> DOE's CBA, Exh. "C" at Section 23.  Pursuant to Plaintiff's CBA, this grievance must be initiated by the employee with the head of the school as the board representative, also known as a "Step 1" or "School Level" grievance.  <u>See id</u>. At the Step 1 level, a conference shall be arranged by the Board representative, or his/her designee, with the aggrieved employee and his/her representative, if any. <u>See id</u>. The conference may be held at a time and place to "afford a fair and reasonable opportunity for all persons entitled to be present to attend." <u>See id</u>. At this conference, the employee may be accompanied by a Union representative, who at this juncture,

<hr>

[5] Plaintiff refers to the February 2, 2018 meeting as a disciplinary hearing (see Am. Compl. ¶ 21), however, the record supports the meeting was actually entitled a disciplinary conference. <u>See</u> Plaintiff's Termination Letter, Exh. "A."

is the chapter leader at the employee's school. See id.

After a Step 1 grievance is initiated, and if unresolved, the employee's Union may appeal from the decision at Step 1 to the Chancellor within 10 school days after the decision of the head of the school is received. See id. This is known as a "Step 2," or "Chancellor Level" grievance. See id. At the Step 2 level, a conference shall be arranged and held at a time and place to "afford a fair and reasonable opportunity for all persons entitled to be present to attend." See id. At this juncture, the Union representative shall be a Union staff representative. See id.

If the grievance is not resolved at the Step 2, Chancellor Level, a Step 3 grievance, or an appeal to arbitration, may be initiated by the Union. See id.

Plaintiff, in detail, outlines in her own Amended Complaint both the DOE disciplinary process, and the grievance processes available to her, which she ultimately utilized. See generally Am. Compl.[6]

As detailed below, on January 26, 2018, while still employed by the Defendant DOE, but suspended without pay, Plaintiff initiated a Step 1, School Level grievance challenging her suspension without pay. See Am. Compl. ¶ 20. See also Plaintiff's Step 1 Suspension Without Pay Grievance Decision ("Step 1 Suspension Grievance"), Exh. "B." Additionally, once terminated, on February 13, 2018, Plaintiff initiated an additional Step 1, School Level grievance challenging her termination. See Am. Compl. ¶ 22. See also Plaintiff's Step 1 Termination Grievance Decision ("Step 1 Termination Grievance"), annexed to the Wilkens' Decl. as Exh.

---

[6] Plaintiff's Amended Complaint purports to outline the dates of Plaintiff's grievances, however, because some of the dates are omitted, for purposes of clarity, the Defendant DOE relies upon the dates recorded in their own records. Plaintiff's omissions include: A Step 1, School Level grievance conference regarding Plaintiff's suspension without pay held on February 8, 2018. See Plaintiff's Suspension Step 1 Grievance, annexed to the Wilkens' Decl. as Exh. "B." Additionally, two separate Step 2, Chancellor level grievance conferences, with respect to both grievances initiated by Petitioner, i.e., her suspension without pay and her termination, were held on April 10, 2018. Lastly, Petitioner received notice that her Step 2, Chancellor Level Grievance regarding her suspension without pay was denied on May 17, 2018. See Plaintiff's Suspension Step 2 Grievance, Exh. "E."

"D." Both grievances were ultimately denied at the Step 1, School Level, then initiated by Plaintiff's Union at the Step 2, Chancellor Level, and, nevertheless, both denied again at the Step 2, Chancellor Level. <u>See</u> <u>generally</u> Am. Compl. ¶ ¶ 20 – 26. <u>See also</u> Plaintiff's Suspension Without Pay Step 2 Decision ("Step 2 Suspension Grievance"), annexed to the Wilkens' Decl. as Exh. "E"; Plaintiff's Termination Step 2 Grievance Decision ("Step 2 Termination Grievance"), annexed to the Wilkens' Decl. as Exh. "F." <u>See also</u> DOE's CBA, Exh. "C." Upon information and belief, once both of Plaintiff's grievance were denied at the Step 2, Chancellor Level, Plaintiff's Union declined to initiate a Step 3 grievance. <u>See</u> Am. Compl. ¶ 28.

    a.  Plaintiff's Alleged Improper Suspension Without Pay Grievance

On January 26, 2018, Plaintiff filed a Step 1, School Level grievance challenging her suspension without pay. <u>See</u> Am. Compl. ¶ 20; Step 1 Suspension Grievance, Exh. "B." On February 8, 2018, in compliance with Plaintiff's CBA, a Step 1 conference was held. <u>See</u> Step 1 Suspension Grievance, Exh. "B." <u>See also</u> DOE's CBA, Exh. "C." At Plaintiff's Step 1 conference, Plaintiff was represented by Union Counsel, Sean Rotkowitz, and met with Principal Proscia to discuss her grievance. <u>See</u> Step 1 Suspension Grievance, Exh. "B." On February 9, 2018, Plaintiff received a letter from Principal Proscia upholding Plaintiff's suspension, thus declining Plaintiff's Step 1, School Level grievance. <u>See</u> <u>id</u>.

Subsequently, Plaintiff's Union initiated a Step 2, Chancellor level grievance.[7] <u>See</u> Am. Compl. ¶ 25; Step 2 Suspension Grievance, Exh. "E." On April 10, 2018, in compliance with Plaintiff's CBA, a Step 2, grievance conference was held, at which Plaintiff was represented by Union Counsel, John Torres. <u>See</u> <u>id</u>. <u>See also</u> DOE's CBA, Exh. "C." Also present at the conference was a hearing officer, Principal Proscia (by telephone), and a representative of the

---

[7] Pursuant to Plaintiff's CBA, at Step 2 of the Grievance Procedure, the decision to appeal a determination beyond Step 2 is left to the discretion of the UFT. <u>See</u> DOE's CBA Exh. "C."

Superintendent. See Am. Compl. ¶ 25; Step 2 Suspension Grievnace, Exh. "E." On or about May 17, 2018, after review of Plaintiff's grievance and the April 10, 2018 hearing conference, a detailed report was issued by the Chancellor upholding Plaintiff's suspension without pay at the Step 2, Chancellor Level. See id.

According to the Amended Complaint, Plaintiff's Union declined to initiate a Step 3 grievance on Plaintiff's behalf regarding Plaintiff's Suspension Without Pay Grievance.[8] See Am. Compl. ¶ 28.

### b. Plaintiff's Alleged Improper Termination Grievance

On February 13, 2018, once terminated, Plaintiff filed an additional Step 1 grievance challenging her termination. See Step 1 Termination Grievance, Exh. "D." See also Am. Compl. ¶ 22. On February 26, 2018, in compliance with Plaintiff's CBA, a Step 1, School Level conference was arranged and held. See Am. Compl. ¶ 23; Step 1 Termination Grievance, Exh. "D." See also DOE's CBA, Exh. "C." At which, Plaintiff, while represented by Union Counsel, Sean Rotkowitz, met with Principal Proscia to discuss her Step 1, School Level Grievance challenging her termination. See Step 1 Termination Grievance, Exh. "D." On February 28, 2018, Plaintiff received a letter from Principal Proscia upholding Plaintiff's termination, and, therefore, denying Plaintiff's grievance at the Step 1, School Level. See id.

Subsequently, Plaintiff's union initiated a Step 2, Chancellor Level Grievance. See Am. Compl. ¶ 25; Step 2 Termination Grievance, Exh. "F." On April 10, 2018, a Step 2 grievance conference was held, at which, Plaintiff was represented by Union Counsel, John Torres. See Am. Compl. ¶ 25; Step 2 Termination Grievance, Exh. "F." Also present at the April 1, 2018 conference was a hearing officer, Principal Proscia (by telephone), and a representative of the

---

[8] Pursuant to Plaintiff's CBA, at Step 3 of the Grievance Procedure, the decision to appeal is left to the discretion of the UFT. See DOE's CBA, Exh. "C."

Superintendent. <u>See</u> <u>id</u>. On or about April 26, 2018, after review of Plaintiff's grievance and Plaintiff's April 10, 2018 hearing conference, a detailed report by the Chancellor was issued upholding Plaintiff's termination at the Step 2, Chancellor Level. <u>See</u> <u>id</u>.

The Amended Complaint contends that Plaintiff's Union declined to initiate a Step 3 grievance on Plaintiff's behalf regarding Plaintiff's termination grievance. <u>See</u> Am. Compl. ¶ 28.

The Chancellor's April 28, 2018 report upholding Plaintiff's termination at the Step 2, Chancellor Level, notes that Plaintiff's termination was further supported by Plaintiff's history of poor professional performance and other acts of professional misconduct. <u>See</u> Step 2 Termination Grievance, Exh. "F." Plaintiff contends, in her Amended Complaint, that while employed by the Defendant DOE, she was never disciplined for misconduct of any kind. <u>See</u> Am. Compl. ¶ 16. As noted in the Chancellor's report; however, Plaintiff did receive letters in her file detailing time and attendance issues in July of 2010, theft of services and professional misconduct issues in November of 2012, verbal abuse issues in January of 2017, an instance in which Plaintiff used a cell phone during a work assignment in January of 2017, and a warning letter for failing to supervise her work assignments in June of 2017. <u>See</u> Step 2 Termination Grievance, Exh. "F."

a. Notice of Claim Filed, Complaint Filed, and Amended Complaint Filed

Plaintiff filed a Notice of Claim against the Defendant DOE on June 8, 2018. <u>See</u> Am. Compl. ¶ 32. <u>See</u> Plaintiff's Notice of Claim, annexed to Wilkens' Decl. as Exh. "G." Plaintiff's notice includes claims of "malicious, deliberate, arbitrary, and capricious violation of due process rights, civil rights, defamation and harassment." <u>See</u> <u>id</u>. This notice, however, does not contain allegations of negligence, prima facie tort, and/or violations of SHRL or CHRL against

the Defendant DOE, all of which are claimed in the instant Amended Complaint. <u>See</u> <u>id</u>.; <u>generally</u> Am. Compl.

Further, Plaintiff chose not to bring any other action, including an Article 78 proceeding, related to any of the allegations set forth in the instant action. <u>See</u> Am. Compl. ¶ 35 (acknowledging that Plaintiff has not sought relief in any other Court).

On October 11, 2019, Plaintiff filed her Complaint, alleging violations of Procedural Due Process in the termination of her employment and license, stigma plus related to her placement on an alleged "problem code," and negligence against the DOE and UFT. <u>See</u> <u>generally</u> Plaintiff's Complaint, filed October 11, 2019. On March 10, 2020, Plaintiff amended her complaint, adding additional claims of "prima facie tort," Civil RICO, and alleged violations of both SHRL and CHRL against Defendant DOE. <u>See</u> <u>generally</u> Am. Compl. The Amended Complaint also contains claims of breach of contract against co-defendant UFT, which will not be addressed herein. <u>See</u> <u>generally</u> Am. Compl.

## <u>ARGUMENT</u>

### POINT I

### <u>ALL CONSTITUTIONAL CLAIMS MUST BE DISMISSED.</u>

**A.** **Plaintiff Did Not Avail Herself of Post-Deprivation Review Mechanisms**

Plaintiff's Due Process Clause claims cannot go forward because the Second Circuit has held that "the Due Process Clause of the Fourteenth Amendment is not violated even when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy." <u>See</u> <u>Hellenic Am. Neighborhood Action Comm. v. City of New York</u>, 101 F.3d 877, 880 (2d Cir. 1996), <u>cert. denied</u>, 521 U.S. 1140 (1997). Where, as here, a Plaintiff "sues the state and its officials and employees for the arbitrary

and random deprivation of a property or liberty interest, 'an Article 78 proceeding is a perfectly adequate post deprivation remedy.'" <u>Grillo v. N.Y. City Transit Auth.</u>, 291 F.3d 231, 234 (2d Cir. 2002) (quoting <u>Hellenic Am. Neighborhood Action Comm.</u>, 101 F.3d at 880)). Here, Plaintiff acknowledged that she chose not to initiate an Article 78 proceeding. <u>See</u> Am. Compl., ¶ 35 (stating that "no prior action citing the facts herein has been filed in any court"). Plaintiff chose not to initiate an Article 78 proceeding to vindicate any alleged due process violations resulting from administrative decisions by the Defendant DOE, and, accordingly, under Second Circuit law, any due process claim alleged by Plaintiff here must fail. <u>See</u> <u>Grillo</u>, 291 F. 3d at 234.[9]

**B.    Plaintiff as an Untenured Employee Does Not Have a Cognizable Property Interest in Her Job and The Process Plaintiff Received More than Satisfies Due Process Clause Minima.**

Assuming, <u>arguendo</u>, the Court entertains Plaintiff's Due Process claims, Plaintiff's claims nevertheless fail. To sustain a § 1983 claim based on an alleged violation of due process, a Plaintiff must show that (1) she possessed a liberty, or property interest protected by the Constitution, or federal statutes; and, (2) she was deprived of that liberty or property interest without due process. <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 313 (2d Cir. 2002). Here, Plaintiff attempts to set forth two primary Due Process Clause interests: (1) a property interest in her job; and, (2) a liberty interest in her reputation, both of which fail for any of the reasons set forth below.

Regarding Plaintiff's contended property interest in her job, Plaintiff, as a non-tenured employee does not have a cognizable interest in her employment. As a non-tenured employee,

---

[9] Plaintiff's Article 78, if filed now, would be barred by the applicable statute of limitations. An Article 78 proceeding must be commenced within four months. <u>See</u> N.Y. C.P.L.R. § 217(1).

Plaintiff functioned as an "at-will" employee under New York law. At-will employees, such as Plaintiff, are without a property interest in employment. See Rosendale v. Mahoney, No. 11-3053, 2012 U.S. App. LEXIS 19206, at *4 (2d Cir. Sep. 13, 2012). See also Wooten-Francis v. City of New York, 2013 U.S. Dist. LEXIS 178458, at *16 (E.D.N.Y. Dec. 19, 2013)("[Plaintiff's] position as a paraprofessional was nontenured, making her an at will employee with no property interest [in her employment]."] Thus, the Fourteenth Amendment's Due Process Clause is not implicated at all in Plaintiff's termination because Plaintiff had no constitutionally cognizable property interest in her termination.

Plaintiff, in her capacity as a nontenured paraprofessional, was provided all the process to which she was due, that is, notice and an opportunity to be heard. Furthermore, Plaintiff could have pursued a meaningful and adequate state law remedy, namely, a state court proceeding pursuant to Article 78 of the Civil Practice Law and Rules. See Giglio v. Dunn, 732 F.2d 1133 (2d Cir. 1984); see also Narumanchi v. Connecticut State Univ., 850 F.2d 70, 72 (2d Cir. 1988). Through an Article 78 proceeding, plaintiff could have, but did not, challenge either her termination from employment, or the…investigation which led to that termination. See Giglio, 732 F.2d at 1135 ("Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity."); see also Marino v. Ameruso, 837 F.2d 45 (2d Cir. 1988).

With respect to the deprivation of either property or liberty interest, the process provided to Plaintiff was more than adequate to meet constitutional minima. See Faghri v. Univ. of Conn., 621 F.3d 92, 10 (2d Cir. 2010) ("Even upon termination . . . the employee is entitled *only* to 'oral or written notice of the charges against [her], an explanation of the employer's evidence, and an

opportunity to present [her] side of the story.") (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)) (emphasis added).  As set forth immediately below, Plaintiff received *all* the above process.

Indeed, the pre-termination and post-termination process Plaintiff received, as it relates to the Defendant DOE, more than satisfies the Constitution.  Pursuant to Plaintiff's CBA, Chapter Twenty-Three, Plaintiff availed herself of the applicable grievance procedures and no violation of said procedures occurred.  See DOE's CBA, Exh. "C."  See generally Am. Compl. ¶¶ 20-32. Indeed, no violation of applicable procedures is even **alleged**. This conclusion is underscored by the fact that Plaintiff, in her own Amended Complaint, outlines in detail the appropriate steps taken by the DOE in handling her grievance.  See generally Am. Compl. ¶¶ 20-26[10].  The procedures followed, as detailed below, comply with the DOE's grievance procedures for paraprofessionals pursuant to their CBA.  See DOE's CBA, Exh. "C."

 Pursuant to Plaintiff's CBA Article Twenty-three, Plaintiff is entitled to initiate a grievance procedure with the head of the school as the board representative.  See DOE's CBA, Exh. "C."  This is known as a Step 1, School Level grievance.  See id. If the grievance is not resolved at Step 1, the Union may appeal from the decision at Step 1 to the Chancellor, known as a Step 2, Chancellor Level grievance.  See id.  Subsequently, an appeal to arbitration, or a Step 3 grievance, *may only* be initiated by Plaintiff's Union.  See id. At each step, the employee may be accompanied by a Union Representative.  See id.  Furthermore, at each step of the grievance procedure, a conference "shall be arranged… afford[ing] a fair and reasonable opportunity for all persons to be present to attend.  See id.

Here, Plaintiff initiated two grievances: one challenging her suspension without pay after

---

[10]  As noted in Footnote 5 & 6, Plaintiff's Amended Complaint occasionally omits dates and/or mis-names the events in the grievance process.  Still, as detailed herein, the Amended Complaint essentially acknowledges that the grievance process unfolded consistent with the applicable CBA. See generally Am. Compl.

allegations of her corporal punishment arose, and an additional grievance after she was terminated following the substantiated findings of her corporal punishment. <u>See</u> Step 1 Suspension Grievance, Exh. "B"; Step 1 Termination Grievance, Exh. "D." For both grievances initiated by Plaintiff, Plaintiff received a conference with Principal Proscia, while represented by Union Counsel, in full compliance with Step 1 of Plaintiff's CBA. <u>See id</u>. <u>See also</u> DOE's CBA, Exh. "C." In further compliance with Plaintiff's CBA, at both Step 1 conferences, Plaintiff was "afford[ed] a fair and reasonable opportunity for all persons entitled to be present to attend." <u>See</u> Step 1 Suspension Grievance, Exh. "B"; Step 1 Termination Grievance, Exh. "D." In fact, Plaintiff does not even raise specific allegations alluding to the contrary. <u>See</u> <u>generally</u> Am. Complaint. At both Step 1 conferences, Plaintiff was given an opportunity to discuss the particulars of her grievances with Principal Proscia, while accompanied by Union Representation. <u>See</u> Step 1 Suspension Grievance, Exh. "B"; Step 1 Termination Grievance, Exh. "D." After the conferences, both grievances were respectively denied at the Step 1, School Level. <u>See</u> id.

Subsequently, Plaintiff's Union initiated a Step 2, Chancellor Level grievance for both Plaintiff's grievance regarding her suspension without pay, as well as Plaintiff's later grievance regarding her termination. <u>See</u> Step 2 Suspension Grievance, Exh. "E"; Step 2 Termination Grievance, Exh. "F." At each Step 2 conference, Plaintiff was represented by Union Counsel. <u>See</u> <u>id</u>. Also present at both conferences, in compliance with Plaintiff's CBA, was a hearing officer, Principal Proscia (by telephone), as well as a representative of the Chancellor. <u>See</u> <u>id</u>. <u>See</u> <u>also</u> DOE's CBA, Exh. "C." Subsequent to both Step 2 conferences, a detailed report was issued by the Chancellor. <u>See</u> Step 2 Suspension Grievance, Exh. "E"; Step 2 Termination Grievance, Exh. "F." The detailed reports both denied Plaintiff's grievances, and upheld the

Defendant DOE's decision to both suspend Plaintiff without pay, and terminate her employment following substantiated findings of corporal punishment.  See id.

 The entirety of this process, a process which Plaintiff herself outlines to the Court in detail, more than satisfies Plaintiff's due process rights.  See also Gonzales v. City of New York, 135 F.Supp. 2d 385 (E.D.N.Y. 2001) ("The Second Circuit has repeatedly held that a grievance procedure in a collective bargaining agreement is generally sufficient to satisfy due process…").

Plaintiff, therefore, received more than adequate notice and opportunity to be heard throughout this grievance process: the evidence against her was presented, reviewed, and, consequently no due process violation occurred.  See Loudermill, 470 U.S. at 545 (notice of the allegations of misconduct, an explanation of the employer's evidence, and an opportunity to be heard is all that the Due Process Clause requires); O'Connor v. Pierson, 426 F.3d 187, 198-99 (2d Cir. 2005) ("Because pre-deprivation process serves a limited function, the Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond."); Ciambriello, 292 F.3d at 321 ("We hold, therefore, that the process due [the employee] was notice of the charges against [her] and the opportunity to be heard before demotion.").

Plaintiff was also provided, and used, post-termination process, namely the grievance process under Plaintiff's CBA. See generally Am. Compl. See also DOE's CBA, Exh. "C."  This too provides more than the sufficient process under the Constitution.  See Narumanchi v. Bd. of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988); Costello v. Fairfield, 811 F.2d 782, 784 (2d Cir. 1987); Hubbard v. Hanley, 09 Civ. 10265 (HB), 2010 U.S. Dist. LEXIS 46550, at *13-14, (S.D.N.Y. May 12, 2010) (Step 2 hearing provided to a unionized City employee was "adequate process" because "the law requires little more than notice and an opportunity to be

heard"); accord O'Connor, 426 F.3d at 198 (CBA grievance procedures generally provide adequate post-deprivation process) (citing cases).

Plaintiff attempts to argue, albeit in a conclusory manner, that the Defendant DOE violated her due process rights; indeed, Plaintiff blithely declares she "was… deprived of property as a result of established governmental procedures without being provided a meaningful hearing before the deprivation occurred." See Am. Compl. ¶ 31. Notwithstanding her conclusory and self-serving allegations, Plaintiff, as she herself outlined in depth, had multiple opportunities to be heard and fails to articulate how she was denied an opportunity to be heard as it relates to Defendant DOE. See generally Am. Compl. Further, all that is required to satisfy Due Process is notice, an explanation of the employer's evidence, and an opportunity to respond – nothing more. Loudermill, 470 U.S. at 545. This process, and much more, was provided to Plaintiff, as even the Amended Complaint makes clear. See Am. Compl. ¶¶ 20-32. Accordingly, Plaintiff's procedural Due Process claims must be dismissed.

## C. Plaintiff's Substantive Due Process Claim Fails.

Plaintiff alleges a second claim for relief, purporting a lost liberty interest in her reputation. See Am. Compl. ¶¶ 39-43. Plaintiff attempts to bring a "stigma plus" claim; however, her weak claim fails. "[T]o plead a stigma-plus claim, a plaintiff must allege (1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden…in addition to the stigmatizing statement." Green v. Dep't of Education, 2019 U.S. Dist. LEXIS 127545, at *33 (S.D.N.Y July 31, 2019)(adopted by Green v. Dep't of Educ., 2019 U.S. Dist. LEXIS 127545 (Sept. 23, 2019)). Additionally, "the defamatory statement must be sufficiently public to create or threaten a stigma." Id., quoting Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005). Plaintiff alleges, "[u]pon Information and belief, Plaintiff remains on the

'Problem Code/Ineligible List' and continues to be disqualified from being employed, in any capacity, by the DOE and/or any contractor who contracts with the DOE." See Am. Compl. ¶ 34. Here, as in Green, the allegations in the Amended Complaint concern only the maintenance of the Defendant DOE's internal records to reflect that Plaintiff was terminated. See Green, 2019 U.S. at *34 ("The absence of any claim that these lists and codes are communicated to potential employers is fatal to [plaintiff's] 'stigma plus' claim."). Accordingly, the Green Court rejected a stigma-plus claim that was based on the DOE's alleged "Problem Code," id., and the Defendant respectfully asserts that this Court should follow that reasoning and reject Plaintiff's stigma plus claim.

## POINT II

### PLAINTIFF'S NEGLIGENCE, PRIMA FACIE TORT, CIVIL RICO, AND ALLEGED VIOLATIONS OF NEW YORK STATE AND NEW YORK CITY HUMAN RIGHTS LAW CLAIMS FAIL

Plaintiff's alleged claims of negligence, prima facie tort, Civil RICO, and alleged violations of SHRL and CHRL against the Defendant DOE fail for multiple reasons as stated in depth below:

**A.** **Plaintiff Failed to Plead Negligence, Prima Face Tort, and Violations of NYSCHRL and NYSHRL in Her Notice of Claim and is Now Precluded from Pleading Such Claims.**

First, under New York Education Law § 3813(1), Plaintiff was required to file a notice of claim within ninety days after the cause of action arose. See Educ. Law § 3813(1). See also Gen. Mun. Law § 50-e. While Plaintiff did file a notice of claim, she did not list negligence, prima facie tort, and/or discrimination based on age. See Plaintiff's Notice of Claim, **Exh. "G."** The Second Department has long held that Plaintiff's failure precludes her from now asserting such claims against the DOE. See Mazzilli v. New York, 154 A.D.2d 355, 357 (2d Dept. 1989) (reversing denial of a motion to dismiss where plaintiff tried to allege, inter alia, a negligence

claim that had not been included in his notice of claim). <u>See</u> <u>also</u> <u>Scott v. City of New York</u>, 40

A.D.3d 408 (1st Dep't 2007)(citing Mazelli).

As the <u>Mazzilli</u> Court explicitly held:

> Causes of action for which a notice of claim is required which are not listed in the plaintiff's original notice of claim may not be interposed. By adding causes of action to recover damages for [inter alia] . . . negligence, the plaintiff substantively changed the nature of his claim . . . . The fact that these alleged causes of action arose out of the same incident is not pivotal; rather, the nature of the claim and the theory of liability are determinative. We therefore grant those branches of the defendants' motion which were to dismiss the . . . causes of action . . . which were not specified in the original notice of claim.

<u>Id</u>. (internal quotations and citations omitted).

Nevertheless, even assuming, <u>arguendo</u>, Plaintiff could overcome this hurdle, Plaintiff's

claims nevertheless fail for the reasons set forth below:

**B.** **Plaintiff's Negligence Claim Fails as Plaintiff Cannot Even Allege a Special Duty on the Part of the Defendant DOE and/or Because a Negligence Claim Cannot Stand Against a Municipal Entity.**

Plaintiff purports, in conclusory fashion, "[a]ll Defendants were negligent and departed

from standards of good and accepted practice, of which they had a non-delegable duty to utilize

reasonable care and judgment…" <u>See</u> Am. Compl. ¶ 50 (emphasis added). Furthermore:

> Defendants… were careless and negligent…in <u>violating each and every rule, regulation, code statute or ordinance</u> governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation, including but not limited to, violating the New York City Chancellor Regulations and the contract existing between the New York City Department of Education and the United Federation of Teachers.[11]

An action of negligence against a government entity cannot be raised without the establishment

of a special duty. The Court of Appeals has:

---

[11] As stated prior, Defendant DOE will not address Plaintiff's purported claims against Co-Defendant, United Federation of Teachers.

> long followed the rule that an agency of government is not liable for the
> negligent performance of a governmental function *unless* there existed a
> special duty to the injured person, in contrast to a general duty owed to
> the public. Such a duty, we have explained -- a duty to exercise
> reasonable care toward the plaintiff -- is born of a special relationship
> between the plaintiff and the governmental entity.

McLean v. City of New York, 12 N.Y.3d 194, 199 (2009) (emphasis added) (internal citations and quotations omitted). A special relationship such as the Court described in its McLean, decision, can be formed in one of three ways:

> when the municipality violates a statutory duty enacted for the benefit of
> a particular class of persons; (2) when it voluntarily assumes a duty that
> generates justifiable reliance by the person who benefits from the duty;
> or (3) when the municipality assumes positive direction and control in
> the face of a known, blatant and dangerous safety violation.

Id. (citing Pelaez v. Seide, 2 N.Y.3d 186, 199-200 (2004)). None of the allegations in Plaintiff's Amended Complaint comport with these standards.

Furthermore, even if Plaintiff were to actually allege a special duty and thus allege negligence, which is not the case here, it is well settled that "[a] public employee's discretionary acts--meaning conduct involving the exercise of reasoned judgment-- may not result in the municipality's liability even when the conduct is negligent." Lauer v. City of New York, 95 N.Y.2d 95, 99 (2000).

For any of the above reasons, Plaintiff's negligence claim against Defendant DOE fails.

## C. Plaintiff Fails to State a Claim of Prima Facie Tort.

With respect to Plaintiff's prima facie tort claim, and even disregarding the deficient notice of claim, Plaintiff fails to establish this claim. In order to plead a prima facie tort claim, a Plaintiff must plead (1) an intentional infliction of harm; (2) without excuse or justification and motivated solely by malice; (3) resulting in special damages; (4) by an act that would otherwise be lawful. See McKenzie v. Dow Jones & Co., 355 F. App'x 533, 536 (2d Cir. 2009); Burns

Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 333 (N.Y. 1983); ATI, Inc. v. Ruder & Finn, Inc., 42 N.Y.2d 454, 458 (1977).

Plaintiff's Amended Complaint contains no allegations that rise to the level of malice or disinterested malevolence. See McKenzie, 355 F. App'x at 536 ("New York courts have been very strict in holding that a cause of action for prima facie tort will not lie unless the actions complained of can be plausibly said to have been motivated solely by malice towards the plaintiff.") (emphasis added). Instead, Plaintiff merely states, in conclusory fashion, "the defendants' actions constitute a prima facie tort." See Am. Compl. ¶ 66. Plaintiff impermissibly supports this baseless conclusion with a catchall: "Plaintiff repeats, reiterates, and realleges, each of the allegations in the Plaintiff's complaint." See Am. Compl. ¶¶ 66, 67. It is well settled that a "[p]rima facie tort should not become a 'catch-all' alternative for every cause of action which cannot stand on its legs." McKenzie, 355 F. App'x at 536 (quoting Belsky v. Lowenthal, 405 N.Y.S.2d 62, 65 (1st Dep't 1978)). For this reason, Plaintiff's claim of prima facie tort against the Defendant DOE fails.

**D.     The DOE Lacks Capacity to Enter into a Civil RICO Conspiracy, Therefore, Plaintiff's Claim of Civil RICO Fails.**

"[A] municipality cannot form the requisite criminal intent for RICO liability." Frooks v. Town of Cortlandt, 997 F.Supp. 438, 457 (S.D.N.Y. 1998) (collecting cases), aff'd, 182 F.3d 899 (2d Cir. 1999). Therefore, as a matter of law, Plaintiff cannot establish that the Defendant DOE engaged in racketeering activity actionable under RICO. See Brewer, 311 F.Supp.2d 382, 398-399 (E.D.N.Y. 2004) (dismissing, on Rule 12(b)(6) motion, all RICO claims against the municipality and the municipal employees in their official capacity). Accordingly, the RICO claims must be dismissed against the Defendant DOE.

Assuming, arguendo, that Plaintiff could overcome these hurdles, Plaintiff nevertheless fails to state a civil RICO claim against the DOE. A critical element to a civil RICO claim is proof that a racketeering enterprise exists and that each defendant has actually engaged in at least two predicate acts in a furtherance of the criminal racketeering enterprise. See DeFalco v. Bernas, 244 F.3d 286, 306 (2nd Cir. 2001) ("The focus of Section 1962(c) is on the individual patterns of racketeering engaged in by a defendant…"). The RICO statute "defines 'racketeering activity' as certain criminal acts under state and federal law including, among other things, mail fraud and wire fraud . . ." Brewer, 311 F.Supp.3d at 402 (citations omitted).

Here, Plaintiff's Amended Complaint is completely devoid of any details concerning the Defendant DOE's alleged racketeering enterprise. See generally Am. Compl. Instead, the exact nature, purpose and dimensions of the alleged enterprise are left to the reader's imagination; Plaintiff does not adequately plead, much less establish, what predicate acts the defendants have engaged in, or what "racketeering activity" those acts allegedly served. See generally Am. Compl.

In a desperate attempt to support this weak claim, it appears, that the Plaintiff alleges the Defendant DOE "material[ly] misrepresent[ed] and conceal[ed]… material facts… made intentionally and/or with reckless disregard for the truth to carry out a common scheme, artifice and fraud to unjustly enrich the Defendants, at a cost to the Plaintiff of her health, employment and career…" See Am. Compl. ¶¶ 53, 54. Plaintiff's vague and self-serving allegations are woefully insufficient to state a claim, and do not even attempt to explain how any of the unspecified challenged acts served to "unjustly enrich" either Defendant.

Plaintiff's conclusory allegations fail to state a claim, and her convenient use of the word "fraud" in connection with the alleged RICO violation cannot save her. See Am. Compl. ¶ 53.

"Rule 9(b) of the Federal Rules of Civil Procedure requires that "In all averments of fraud…the circumstances constituting fraud…shall be stated with particularity…"  See F.R.C.P. 9(b).  "To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."  Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  Plaintiff simply cannot satisfy this standard with conclusory allegations.  See Global Vlie Limited v. Great Central Exploration,  288 F. Supp. 2d 473, 478 (S.D.N.Y. 2003).  The Second Circuit has noted that Rule 9(b) must be construed strictly "in order to minimize strike suits, to protect defendants…from harm to their reputation resulting from ungrounded actions, and to give defendants notice of the precise conduct in issue."  Billard v. Rockwell International, 683 F.2d 51, 57 (2d Cir. 1982).

In the context of civil RICO, Plaintiff is required to provide specifics, including the method and manner in which the fraud was committed, concerning how each and every individual defendant engaged in an alleged fraudulent act or contributed to a fraudulent scheme. See Frooks, 997 F.Supp. 438, 457-458 (S.D.N.Y. 1998).  As outlined above, Plaintiff's allegations fail to meet this standard.  Moreover, "the mere assertion that fraudulent statements were made, without more, is wholly insufficient to support a claim of fraud."  Id., quoting Segal v. Gordon, 467 F.2d 602, 608 (2d Cir. 1972).  Therefore, Plaintiff's vague allegations are simply insufficient to support her RICO claims.

**E.    Plaintiff Fails to State a Viable Claim for Age Discrimination under the New York State Human Rights Law and New York City Human Rights Law.**

As noted above, Plaintiff's SHRL and CHRL claims fail because Plaintiff did not identify such claims in a timely notice of claim. <u>See</u> Educ. Law § 3813(1); Gen. Mun. Law § 50-e**.**  <u>See also</u> Plaintiff's Notice of Claim, Exh. "G."   As set forth below, even beyond that deficiency, these claims fail.

Under the SHRL and the CHRL, age discrimination in employment is, of course, illegal. <u>See</u> New York Executive Law § 296(1)(a); New York City Administrative Code § 8-107(a).  The standard for evaluating discrimination claims under Title VII and the SHRL are identical.  <u>See</u> <u>Henvill v. Metro. Transp. Auth.</u>, 2017 N.Y. Slip Op 31559[U], *15 (Sup. Ct., N.Y. County 2017)(citing <u>Kelly v. Howard I. Shapiro & Assoc. Consulting Eng'rs</u>, P.C., 716 F.3d 10, 14 (2d Cir. 2013)); <u>see</u> <u>also</u> <u>Marcus v. Leviton Mfg. Co.</u>, 661 F. App'x 29, 33 (2d Cir. 2016)(summary order)(standards identical under ADEA and NYSHRL).

A prima facie case of discrimination requires "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination."  <u>See</u> <u>Hedges v. Town of Madison</u>, 456 F. App'x 22, 23 (2d Cir. 2012).  While Plaintiff need not plead a prima facie case to withstand a motion to dismiss, she must still set out a plausible claim for relief under the United States Supreme Court's decisions in <u>Twombly</u> and <u>Iqbal</u>.  <u>See</u> <u>id</u>.; <u>see also</u> <u>Kairam v. W. Side GI, L.L.C.</u>, No. 19-447-cv, 2019 U.S. App. LEXIS 36348, at *6 (2d Cir. Dec. 9, 2019)(summary order).  In addition, a complaint still must give "plausible support to a minimal inference of discriminatory motivation."  <u>See</u> <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 311 (2d Cir. 2015).

Under the CHRL, the analysis is whether the plaintiff has been treated less well than other employees because of a protected characteristic.  <u>See</u> <u>Williams v. NY City Hous. Auth.</u>, 61

A.D.3d 62, 78 (1st Dep't 2009). Even under the more permissive pleading standards of the CHRL, the plaintiff must adequately plead that the adverse employment action was caused at least in part by discriminatory motives. See Ortiz v. Std. & Poor's, No. 10 Civ. 8490 (NRB), 2011 U.S. Dist. LEXIS 99122, at *15-16 (S.D.N.Y. Aug. 26, 2011). Where a Plaintiff fails to meet this threshold she fails to state a claim under both the CHRL and SHRL. See id.

Here, Plaintiff does not allege any basis to infer she was subject to discrimination on the basis of her age. Plaintiff's Amended Complaint is completely devoid of any factual allegations that any action was taken against Plaintiff because of a protected characteristic. See generally Am. Compl. Instead, the Amended Complaint states, in conclusory fashion, "[t]he defendants' actions unlawfully discriminated against the Plaintiff and subjected her to harm for no lawful reason other than the reckless collusion as a result of her age and seniority." See Am. Compl. ¶ 59. In effect – indeed, in her own words -- Plaintiff relies on nothing more than the conclusory allegation that she was subject to discrimination. See Robbins v City of NY, 2017 NY Slip Op 32422[U], *3 [Sup Ct, Queens County 2017])("This remains a classically deficient case of a plaintiff alleging 'nothing more than the recitation of a false syllogism: (1) I am (insert name of a protected class); (2) something bad happened to me at work; (3) therefore, it happened to me because I am (insert name of protected class") (citing and quoting Bermudez v. City of N.Y., 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011)). Plaintiff alleges no words or conduct on the part of the Defendant DOE to indicate a bias with respect to her age, nor does Plaintiff offer any factual support suggesting there was a similarly situated younger, individual who engaged in similar conduct, or who had similar performance issues, and was treated differently. See generally Am. Compl. As a result, Plaintiff fails to state a viable claim under the SHRL, or CHRL. Therefore, all of Plaintiff's discrimination claims should be dismissed.

Furthermore, Plaintiff should not be entitled a further opportunity to amend. It is well settled that leave to amend should not be afforded when "[previous permission to amend] failed to cure deficiencies." See Jenkins v. Sea-Land Serv., 1994 U.S. Dist. LEXIS 11477, at *12 (S.D.N.Y. Aug. 17, 1994). Here, Plaintiff amended her previous complaint; however, as stated in depth above, she nevertheless failed to raise any cognizable claims against Defendant DOE with necessary particularity. See generally Am. Compl. Therefore, Plaintiff's claims should be dismissed with prejudice.

## **CONCLUSION**

For the above reasons, Defendant DOE respectfully requests that its motion to dismiss be granted, that Plaintiff's Amended Complaint be dismissed with prejudice, that the relief requested be denied, that judgment be entered for Defendant DOE, and that Defendant DOE be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated:       New York, New York
              April 29, 2020

                                   **JAMES E. JOHNSON**
                                   Corporation Counsel of the
                                     City of New York
                                   Attorney for Defendant DOE
                                   100 Church Street, Room 2-109e
                                   New York, New York 10007-0261
                                   (212) 356-4083

                By:                      /s/
                                  Kimberly E. Wilkens
                              Assistant Corporation Counsel