# EXHIBIT "B"

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------------X<br>MICHELE VALVO<br><br>        Plaintiff,<br> -against-<br><br>THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, and THE UNITED FEDERATION OF TEACHERS,<br><br>       Defendants.<br>-------------------------------------------------------------------X | **AMENDED<br>COMPLAINT**<br><br>Civ Action No.: 19-cv-08341<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1. This is an action arising under 42 USC §1983, the Racketeer Influenced and Corrupt Organizations Act, 18 USC §1961 *et seq,* New York State Constitution Article 1, Section 6, New York State Executive Law (Human Rights Law) Section 290, *et seq.,* Chapter I, Title 8 of the Administrative Code of the City of New York, Section 8-107(1)(a) (referred to as the Human Rights Law of the City of New York), asserting claims for violations of the foregoing statutes, including continually depriving the Plaintiff of property without the procedural due process guaranteed under the Fourteenth Amendment, retaliation for complaining thereof against the defendants, and for workplace harassment which resulted in a Stigma Plus stain on Plaintiff's career and life; State laws governing employment, seeking monetary and declaratory relief against Defendants for committing acts with the intent and for the purpose of depriving Plaintiff of property and liberty rights without the procedural due process guaranteed under the Fourteenth Amendment of the Constitution of the United States, and for refusing to or neglecting to prevent such deprivations and denials to Plaintiff.

1

2. Plaintiff was denied a fair arbitration hearing by her Union, the United Federation of Teachers (henceforth "UFT"), after she was accused of an act of misconduct by an anonymous person and the UFT did not investigate nor did they support her when she asked to have a hearing on the matter.

3. After receiving information about the allegation of corporal punishment allegedly occurring on January 25, 2018, without giving Plaintiff an opportunity to say what happened, the Department of Education of the City of New York ("NYCDOE") placed her name and social security number into the "Problem code" database at the Office of Personnel Investigations, a division of the Monitoring Unit in the Department's Human Resources. A "red flag" was put onto Plaintiff's fingerprints and file and released to various officials at the United Federation of Teachers ("UFT") who did not assist her in removing such damaging information and thus harming her reputation without cause. Upon information and belief, at the time of Valvo's discontinuance from employment with the NYCDOE, Valvo was assigned a "problem code" as such codes are assigned to all employees who do not voluntarily discontinue their employment. As an individual with a "problem code" Plaintiff is prohibited from employment by the NYCDOE at any district with the City of New York. At no time was Plaintiff given any information on how to remove her name from this "Code"/ineligible list.

4. As a result of the action of the NYCDOE Plaintiff has been improperly terminated from her position, and due to the "problem code" her New York City Licenses has been constructively terminated and her New York State certificates have suffered a diminishment in value.

5. Plaintiff completed all her administrative remedies but has given no relief. There is no adequate remedy in the Collective Bargaining Agreement ("CBA) with Defendant UFT, nor is there an effective procedure to remove the flag from Plaintiff's fingerprints. Therefore, she must bear this stigma forever, according to the so-called "investigator" at the Department's Office of Personnel Investigations ("OPI"). Plaintiff is left without any options to obtain relief from the damage created by her former employer and Union after false and damaging information was used against her. Plaintiff had never received prior notice of any "report" placing her on a "Problem Code/Ineligible List."

6. Plaintiff filed a timely Notice of Claim which was never resolved. She seeks nominal and compensatory damages to the extent allowable by law, and declaratory relief regarding the unconstitutional acts and practices of Defendants.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 for claims arising under 42 U.S.C. 1983.

8. This Court has jurisdiction pursuant to 42 U.S.C.§1983 and 18 USC §1961 ("RICO") to hear suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, which may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. This Court has pendent and supplemental jurisdiction over Plaintiff's state law and city law claims, as the facts

that form the basis of the state and city law claims are substantially similar to the facts that form the basis of the federal law claims.

9. The Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## PARTIES

10. During all times relevant and material to this Complaint, Plaintiff Michele Valvo ("Plaintiff") is a resident of Richmond County and was employed by the New York City Department of Education as a paraprofessional from approximately 2002 through February 13, 2018, the effective date of her discontinuance with the New York City Department of Education.

11. During all times relevant and material to this Complaint, Defendant New York City Department of Education ("NYCDOE") is a school board organized under and exiting pursuant to the Education Law of the State of New York, and, for purposes, serves as the public employer of all persons appointed to or assigned by it.  At all relevant times herein, the NYCDOE was a "person" acting under the color of state law pursuant to 42 U.S.C. § 1983.

12.  During all times relevant and material to this Complaint, The United Federation of Teachers ("UFT") is a "labor organization" within the meaning of the Labor Management Relations Act and the National Labor Relations Act and maintains its principal place of business at 52 Broadway, New York, NY 10004.

# FACTS

13. Plaintiff possesses a New York State Teachers Certification and License. She is licensed as a DOH Early Intervention provider and ABA Trained. She is professionally certified to work with autistic children that have outbursts and tantrums and need transitional situations.

14. Plaintiff was employed by the NYCDOE as a paraprofessional from 2002 until her termination in February 2018.

15. From 2007 through February 2018 Plaintiff was employed at P.S. 23 located at 30 Natick St., Staten Island, NY 10308.

16. During the time Plaintiff was employed by the NYCDOE her performance was satisfactory, and she was never given any discipline for any misconduct of any kind. In fact, she was sought out as a mentor for children who were the most vulnerable and in the most need of guidance.

17. On January 26th, 2018 Plaintiff was summoned to the office of P.S. 23's Principal Paul Proscia ("Proscia") and given a letter dated January 26th, 2018 from Robert Scamardella ("Scamardella") stating that she was suspended without pay pending an investigation of a serious accusation. The letter further stated that Plaintiff's health benefits would cease at the same time.

18. Upon information and belief, the serious allegation was that, based on an anonymous parental report to Janie Swincicki ("Swincicki"), Parent Co-ordinator, Plaintiff was allegedly verbally and physically abusive to a special needs student at P.S. 23 on January 25th, 2018. However, the facts are alarmingly different. On Thursday January 25, 2018 at approximately 11:15 a.m. in 1st floor stair well student "Connor" was having an

emotional breakdown (yelling, screaming no, stamping feet and crying) which is common with autistic children when something is not going their way. The reason for his behavior was because his para went back to the classroom with another student to get her and Connor's coats. Connor wanted to go with her. Connor was not complying with the teacher; she stated she was going to leave without him. Plaintiff stepped in and started to talk to him, took his arm gently, and said "let's go, hurry before they leave without us! This has to stop we have to get to lunch." Plaintiff continued to talk as she has done many times in the past with Connor and other students, in a gentle and soft-spoken voice, and continued to walk holding Connor's arm. Connor continued to scream and cry and say "NO" however he complied with what Plaintiff needed him to do and that was walk to the lunchroom. Plaintiff continued to talk with Connor in a gentle voice, repeating things over and over again (method of distraction) while walking to lunch room. In the lunchroom Plaintiff asked Connor to stop screaming and sit down so she could help him. Connor started to scream and cry louder while lifting his arms up and yelled "NO". Plaintiff again asked him to stop and sit down. She asked him to turn around and put his feet under the table. He lifted his legs, and Plaintiff guided them under the table. She sat next to him and said "now you need to take a deep breath. Take a deep breath and calm down and breathe so I can help you." Connor started to wipe his face saying ok ok." Plaintiff said, "take another deep breath and tell me what's wrong so I can help you". At this point Connor stopped crying. He told Plaintiff about wanting to go with his para. Plaintiff then explained he has to remember sometimes his para has to go places without him, then the para came back.

19. Plaintiff has been able to de-escalate many episodes with Connor like this, in the past, without incident. Plaintiff is trained in working with children that suffer with autism (Mild-Sever) who have these emotional transitional breakdowns. Plaintiff worked the summer DOE ESY Program where she worked with children that have many types of outburst including aggressive ones and she has been called upon to assist with handling the situation. She has often be assigned to work with problematic/aggressive students, and has had no charges filed against her.

20. Thereafter, on January 26th, 2018 Plaintiff filed a Step 1 Grievance regarding her suspension and the grievance was denied on February 9, 2018.

21. On February 2nd, 2018 a disciplinary hearing was held before the Principal of PS 23, Paul Proscia, regarding the January 26th, 2018 suspension. At the hearing, Plaintiff was presented with the charges against her and permitted to review the written statements for the individuals interviewed during the investigation. Plaintiff also provided her own written statement regarding the incident.

22. On February 13th, 2018 Plaintiff again met with the Proscia who advised her that as a result of the investigation her suspension was upheld, and she was terminated from her position.

23. Thereafter, on February 13th, 2018 Plaintiff filed a Step 1 grievance. The Step 1 grievance was held on February 26, 2018 and denied on February 28th, 2018.

24. At the hearing for the Step 1 grievance on February 26th, 2018, Plaintiff's termination was upheld based upon the allegation that Plaintiff verbally and physically abused a special needs child.

25. On April 10th, 2018 a Step 2 grievance was held in reference to Plaintiff's suspension and termination which was upheld on April 26th, 2018.

26. The April 26th, 2018 letter signed by Richard Carranza ("Carranza") upholding Proscia's decision to terminate was improperly based, in part, upon prior allegations of poor performance dating back to 2012.

27. The alleged prior acts of poor performance should not have been included in Plaintiff's employment file and should not have been considered in connection with the decision to discontinue Plaintiff. The following information was given to the UFT by Plaintiff:

"The letters which you claim are in my file are either not there, or untrue and unseen by "be, meaning they are not valid.

1. **June 22, 2012** Allegation: Professional Misconduct/Theft of Service Result: Letter to File. I never laid eyes on this letter to file until I received my termination packet. This letter was never in my file nor was it ever signed by me which proves I never saw it, and if I was made aware of it and refused to sign it the Principal would have had to make note stating I refused to sign.
2. **August 2012,** Allegation: Violation of Chancellors Regulation C-604 Result Letter to File. When interviewed and in the letter itself I said I was not aware I was violating any regulations. This letter was removed in **September 2015** by me since the three year period was up.
3. **December 2016 A**llegation: Verbal Abuse Result: Letter to File this letter was for allegations made against me for verbal abuse toward a student on December 8 2016. January 3 2017 was the **second** time Principal Proscia placed this letter in my file. The first time was on **December 14, 2016**. I filed a Step 1 grievance on **December 16, 2016** and the Step 1 grievance was held on the same day. I was not present. It was done over the phone between my Union Representative Sean Rotkowitz at the main office on Amboy Rd, SI and Principal Proscia. On **December 18, 2016** Principal Proscia removed the letter from my file, calling my grievance "moot".
4. **June 2017** Allegation: Poor Judgement Result: Letter to file for being on my cell phone. I was not on my cell phone as I explained in a written statement when accused. I also requested Principle Proscia attach my statement to the letter. He proceeded to put in my file anyway.
5. **December 2017** Allegation: 1:1 child walked out of building to his mother during dismissal and Ms.Valvo was unaware he was missing. Result: letter

8

dated 1/5/2018. This was not a letter in my file. Principal Proscias exact words to me when I was called into his office on 1/4/18 were "this meeting was being held without a Chapter leader since no disciplinary actions are being taken". He stated this was going to be "A LETTER TO POCKETBOOK" since he had to memorialize it. Principal Proscia stated he believed it was an honest mistake and that no one was purposely neglecting their duties. The incident also involved the 3 other adults in the classroom. They were the teacher MS. MacDonald, Formula Para Kelly Lopez and 1:1 Para Sara Alhurani. We were all called in to his office individually then as a group to discuss the incident. Then on 1/5/2018 he put a letter in my mailbox (Ms. Macdonald also received one) stating he and Assistant Principal Renee Mazza meet with me individually and then again with Ms. MacDonald, Kelly Lopez and Sara Alhurani. He states "We discussed an incident where my 1:1 student walked out of the class without my knowledge during dismissal time and dismissed himself to his mother (quite different from allegations stated above). Then he had 3 bullet points about my role and responsibilities as a Paraprofessional and 1 stating I need to revisit the Win-Win agreement with the teacher. Not making light of the situation, but not only did he get past the four adults in the classroom he also got past all the adults in the hallway, lobby where by the way the Assistant Principal is also stationed at dismissal plus there is a security guard  and then  out the front door where other teachers were dismissing their students one by one

6. **January 2018  Allegation: Corpral Punishment  Results: Letter to File Dated 2/9/2018 Stating I'm Terminated effective close of business 2/13/2018.** On the first page second paragraph of termination letter and again on the Employee Disciplinary History Page last entry dated  January 2018, the Principal repeats himself twice when he states:

    "Allegation: parent coordinator received an anonymous call from a parent that her child reported that in the cafeteria a paraprofessional had another child by the arm, grabbed/yanked his arms, wrapped her arms around him and spun him around and pulled him to get him in his seat. If I was doing all this why didn't someone step in?  Why wasn't security called? Additionally, Janie Swincicki's (parent co-ordinator) did NOT write those words in her statement. She spoke to the  annonymous caller.  She states the anonymous called said   her child told her a lady at lunch grabbed a little boy's arms and held them over his head and pushed him to sit down.  Indeed, if the kindergarten student saw this, how do they know what **lady** he/she is referring to?  There are a many women going in and out of that lunchroom (Paras,teachers, aids, lunch ladys, PTA mothers).  What is the absolute truth here is, I was not the person who did this.

9

28. In April 2018, Plaintiff requested a Step 3 Grievance and Arbitration which the UFT denied on October 12, 2018.

29. On October 18,2018 an appeal meeting held with Michael Ferrusso of the UFT to seek a grant of Arbitration.  The UFT denied the request on December 5th, 2018.

30. On February 25, 2019 Plaintiff appealed to the Ad.Com Grievance Committee seeking to have arbitration go forward.  The committee denied the request on April 18th, 2019 with a shocking letter supporting their decision with lies about the alleged misconduct, made by Chief of Staff Leroy Barr who was not at the Committee meeting where Plaintiff described how she was innocent of any and all misconduct. The UFT does not have investigators, and therefore the information convicting the Plaintiff of wrong-doing came solely from the Department of Education.

31. Plaintiff was thus deprived of property as a result of established governmental procedures without being provided a meaningful hearing before the deprivation occurred, in violation of the procedural due process rights and guaranteed under the Fourteenth Amendment. Neither the UFT nor the Department of Education offered her an opportunity to stop the false charges before they became permanent and punitive.

32. On June 8, 2018 Plaintiff served and filed a Notice of Claim against the DOE and the Comptroller of the City of New York alleging that the foregoing actions by the DOE deprived Plaintiff of her constitutional and statutory rights to due process and to defend the allegations before an impartial court and/or hearing officer and the right to confront those who accused her of the charges which were substantiated.

33. More than thirty days has elapsed since the Notice of Claim has been filed against the DOE and the claim has not been adjusted.

34. Upon information and belief, Plaintiff remains on the "Problem Code/Ineligible List" and continues to be disqualified from being employed, in any capacity, by the DOE and/or any contractor who contracts with the DOE.

35. No prior action citing the facts herein has been filed in any court.

### FIRST CLAIM FOR RELIEF
### Due Process – Fourteenth Amendment
### (42 U.S.C. § 1983)

36. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the Plaintiff's as if more fully realleged and set forth at length herein.

37. While acting under the color of state law, the NYCDOE and UFT terminated Plaintiff's employment without providing procedural due process before the deprivation of property.

38. The facts in this matter show that Plaintiff was never heard by any party, and she was deprived of her livelihood and good reputation and convicted of corporal punishment without a finding of probable cause.

39. As a proximate result of Defendant's actions against Plaintiff, Plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering and damage to her professional reputation.

### SECOND CLAIM FOR RELIEF

### AS TO ALL DEFENDANTS
### Due Process – Fourteenth Amendment
### (42 U.S.C. § 1983/Liberty Interest)

40. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the Plaintiff's as if more fully realleged and set forth at length herein.

11

41. While acting under the color of state law, the NYCDOE constructively terminated Plaintiff's New York City License without providing procedural due process before the deprivation of property.

42. The Plaintiff's claim is one for loss of reputation. The loss of one's reputation can violate the Due Process Clause if the loss of reputation is associated with the deprivation of a federally protected liberty interest, such as government employment. Bd. of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ; Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994).

43. The loss of reputation without due process of law, in combination with the loss of a more tangible interest, is referred to as a "stigma plus" claim. The "stigma" within a stigma plus claim is the loss of reputation and the "plus" is the loss of a more tangible interest, such as employment. See Velez v. Levy, 401 F.3d 75, 87–88 (2d Cir. 2005) ; Spang v. Katonah-Lewisboro Union Free Sch. Dist., 626 F.Supp.2d 389, 394–95 (S.D.N.Y. 2009). "Because stigma plus is a species within the phylum of procedural due process claims, the Plaintiff must demonstrate that his liberty interest was deprived without due process of law in addition to proving the deprivation of a liberty interest". Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006).

44. "[T]he availability of adequate process defeats a stigma plus claim." Id. This is often done through a name-clearing hearing. "[T]he hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely to provide the person an opportunity to clear his name." Codd v. Velger, 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1997) (per curiam) (quotation marks omitted); Segal, 459 F.3d at 214 (in cases involving "at-will government employee[s], the

availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim"). Here, Plaintiff was denied such a hearing by the Defendants.

45. As a proximate result of Defendant's actions against Plaintiff, Plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering and damage to her professional reputation.

## THIRD CLAIM FOR RELIEF

### AS TO ALL DEFENDANTS
### CAUSE OF ACTION FOR NEGLIGENCE

46. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the Plaintiff's as if more fully realleged and set forth at length herein.

47. While acting under the color of state law, the NYCDOE and UFT constructively terminated Plaintiff's Certification without providing procedural due process before the deprivation of property.

48. All Defendants were negligent and departed from standards of good and accepted practice, of which they had a non-delegable duty to utilize reasonable care and judgment in the performance of their respective responsibilities and obligations with respect to the Plaintiff; such negligence was continuing and cumulative over the period of time referenced herein.

49. Defendants' negligence and negligent acts, whether taken singularly or in combination, were a direct and proximate cause of Plaintiff's suffering, mental anguish, and loss of personal dignity, both in the past and continuing in the future.

50. The Defendants, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the

unsubstantiated claims made against the Plaintiff; in screening them before taking action against a teacher, for their credibility, veracity, and reliability; and for the removal of the Plaintiff from her position; among other things: in failing to possess the requisite learning, skill, knowledge and judgment ordinarily exercised in investigating and monitoring claims against faculty members; in failing to perform certain procedures, which the reasonably skillful and competent personnel would have so done under the circumstances; and in violating each and every rule, regulation, code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation, including but not limited to, violating the New York City Chancellor Regulations and the contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT).

51. As a proximate result of Defendant's actions against Plaintiff, Plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering and damage to her professional reputation.

## **FOURTH CLAIM FOR RELIEF**

### **AS TO ALL DEFENDANTS**
### **CAUSE OF ACTION FOR CIVIL RICO**

52. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the Plaintiff's as if more fully realleged and set forth at length herein.

53. Defendants material misrepresentations and concealment of material facts were made intentionally and/or with a reckless disregard for the truth, to carry out a common

scheme, artifice and fraud to unjustly enrich the Defendants, at a cost to the Plaintiff of her health, employment and career.

54. Any reasonable person in the Plaintiff's position, including the Plaintiff, would rely on the Defendants' false, misleading and deceitful information and act accordingly.

55. The Plaintiff was in fact deceived and misled by the Defendants.

56. As a result of the foregoing, the Plaintiff sustained economic damages.

57. As a result of the aforesaid, the Plaintiff was rendered sick, and disabled, suffered, still suffers, and will continue to suffer for some time to come from great pain, mental anguish, nervous shock, and was incapacitated from attending to her usual duties, all to her damage.

### FIFTH CLAIM FOR RELIEF

### AS TO ALL DEFENDANTS
### CAUSE OF ACTION FOR VIOLATION OF NEW YORK STATE
### AND NEW YORK CITY HUMAN RIGHTS LAWS

58. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the Plaintiff's as if more fully realleged and set forth at length herein.

59. The defendants' actions unlawfully discriminated against the Plaintiff and subjected her to harm for no lawful reason other than the reckless collusion as a result of her age and seniority.

60. As a result of the foregoing, the Plaintiff sustained economic damages.

61. As a result of the aforesaid, the Plaintiff was rendered sick, and disabled, suffered, still suffers, and will continue to suffer for some time to come from great pain, mental anguish, nervous shock, and was incapacitated from attending to her usual duties, all to her damage.

## SIXTH CLAIM FOR RELIEF

## AS TO DEFENDANT UFT
## CAUSE OF ACTION FOR BREACH OF CONTRACT

62. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the Plaintiff's complaint designated as if more fully realleged and set forth at length herein.

63. In or about 1995, the defendants and the Plaintiff entered into an employment agreement that governed the employer/employee relationship in the form of the collective bargaining agreement. The most uncharted and difficult problem area in the development of arrangements for determination of the representation status is that of initial determination of the employee-employer unit identifying the employees to be represented. Criteria for the definition of the term "appropriate" are required which square with the characteristics of the public employment relationship and with the joint responsibility of the employees and administrators for the effective performance of their mission, namely, to serve the public. A community of interest must be created for conditions of employment to apply with particularity to the employees in the unit.

64. The egregious, unjustified conduct of the Defendant UFT constitutes a breach of the employment agreement between the Plaintiff and her Union.

65. As a result of the foregoing, the Plaintiff sustained economic damages.

## SEVENTH CLAIM FOR RELIEF

## AS TO ALL DEFENDANTS
## CAUSE OF ACTION FOR *PRIMA FACIE* TORT

16

66. Plaintiff repeats, reiterates, and realleges, each of the allegations contained in the Plaintiff's complaint designated as if more fully realleged and set forth at length herein.

67. The defendants' actions constitute a *prima facie* tort.

68. As a result of the foregoing, the Plaintiff sustained economic damages.

69. By reason of the aforesaid, the Plaintiff was rendered sick, and disabled, suffered, still suffers, and will continue to suffer for some time to come from great pain, mental anguish, nervous shock, and was incapacitated from attending to her usual duties, all to her damage.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MICHELE VALVO, demands judgment against Defendants on the First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action in the aggregate and requests judgment against Defendants as follows:

A. For appropriate compensatory damages against Defendants in an amount to be determined at trial

B. For appropriate declaratory relief regarding the unconstitutional acts and practices of Defendant;

C. For nominal damages

D. For an award of reasonable attorney's fees, and

E. For such other relief and further relief as may be deemed just and proper.

**JURY DEMAND**

      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

Dated:    March 10, 2020
            New York, New York

                                      MASON LAW, PLLC

                                      */s/ D. Christopher Mason, Esq.*
                                      D. Christopher Mason, Esq.
                                      11 Broadway – Sixth Floor
                                      New York, New York 10004
                                      212-498-9691