UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

MICHELE VALVO,

          1:19-cv-08341(JPO)

        Plaintiff,

    - against -

THE DEPARTMENT OF EDUCATION OF THE CITY
OF NEW YORK; and THE UNITED FEDERATION OF
TEACHERS,

        Defendants.

-------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNITED FEDERATION OF
TEACHERS' MOTION TO DISMISS THE AMENDED COMPLAINT**

ROBERT T. REILLY
52 Broadway, 9th Floor
New York, New York 10004-1614
(212) 228-3382

*Attorney for Defendant United Federation of Teachers*

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF RELEVANT FACTS ................................................................... 3

    A.    Plaintiff's Employment by DOE ............................................................ 3

    B.    UFT's Relationship with DOE and Plaintiff ......................................... 3

    C.    Plaintiff's Suspension and Termination Regarding a Corporal Punishment and Verbal Abuse Incident with a Special Needs Student at P.S. 23 ........................... 4

    D.    Plaintiff's Grievance Over Her Termination ......................................... 4

    E.    UFT Decision to Not Pursue Arbitration and Plaintiff's Appeals ........................ 6

    F.    Instant Lawsuit ...................................................................................... 7

ARGUMENT ........................................................................................................... 8

POINT I .................................................................................................................... 8

THE FIRST AND SECOND CLAIMS FOR RELIEF AGAINST THE UFT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE THE UFT DID NOT TERMINATE PLAINTIFF'S EMPLOYMENT, WAS NOT A STATE ACTOR, AND DID NOT ACT UNDER THE COLOR OF STATE LAW ................................... 8

POINT II ................................................................................................................... 9

PLAINTIFF UTTERLY FAILS TO PLEAD ANY FACTS IN SUPPORT OF HER CLAIM UNDER RICO ................................................................................. 9

    A.    Plaintiff Fails to Allege a Single Element of a RICO Violation ............................. 10

    B.    Plaintiff Has Failed to Allege the Existence of an Enterprise ................................. 10

    C.    Plaintiff Has Failed to Allege Mail or Wire Fraud or Any Other Predicate Act ...... 11

    D.    Plaintiffs Amended Complaint Does Not Sufficiently Plead Fraud ........................ 12

    E.    Plaintiff Does Not Allege Injury and Therefore Does Not Have Standing .............. 13

    F.    Plaintiff's RICO Allegation is a Bare Attempt to Establish Federal Jurisdiction..... 15

POINT III ............................................................................................................... 16

PLAINTIFF'S THIRD AND SIXTH CLAIMS FOR RELIEF, THAT THE UFT WAS NEGLIGENT OR COMMITTED BREACH OF CONTRACT IN ITS REPRESENTATION, SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION ................................................. 16

POINT IV ............................................................................................................... 17

PLAINTIFF'S THIRD, SIXTH AND SEVENTH CLAIMS FOR RELIEF AS AGAINST UFT, IF CONSTRUED UNDER NEW YORK LAW, ARE TIME-BARRED AND LACK SUFFICIENT FACTUAL ALLEGATIONS UNDER THE *MARTIN* RULE ..................... 17

POINT V .................................................................................................................. 20

PLAINTIFF CLAIMS UNDER NYSHRL AND NYCHRL ARE PREMPTED BY THE DUTY OF FAIR REPRESENTATION AND THERE IS NO PLAUSIBLE

ALLEGATION THAT THE UFT DISCRIMINATED AGAINST PLAINTIFF BECAUSE OF HER MEMBERSHIP IN A PROTECTED CLASS................................... 20

POINT VI........................................................................................................................... 23

PLAINTIFF FAILS TO STATE A CLAIM FOR PRIMA FACIE TORT SINCE SHE DID NOT PLAUSIBLY ALLEGE THE UFT ACTED WITH DISINTERESTED MALEVOLENCE OR THAT SHE SUFFERED SPECIAL DAMAGES........................... 23

CONCLUSION..................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Am. Fed'n of State, Cty. & Mun. Employees Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*,
948 F.Supp.2d 338 (S.D.N.Y. 2013) ............................................................................... 12

*Annulli v. Panikkar*,
200 F.3d 189 (3d Cir. 1999)............................................................................................. 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................... 8, 17

*Baumgart v. Stony Brook Children's Serv., P.C.*,
249 Fed. Appx. 851 (2d Cir. 2007)................................................................................ 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................ 8

*Benzinger v. Lukoil Pan Americas, LLC*,
16-cv-8533(PAE), 2020 WL 1322478, *14 (S.D.N.Y. Mar. 20, 2020) ......................... 22

*Blum v. Yaretsky*,
457 U.S. 991 (1982)........................................................................................................ 9

*Boritzer v. Calloway*,
10-CV-6264 (JPO), 2013 WL 311013 (S.D.N.Y. Jan. 24, 2013)................................... 12

*Brandt v. Winchell*,
283 A.D. 338 (1st Dep't 1954) ...................................................................................... 24

*Brass v. Am. Film Techs., Inc.*,
987 F.2d 142 (2d Cir. 1993).............................................................................................. 3

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
59 N.Y.2d 314 (1983) ............................................................................................... 23, 24

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
69 F.Supp.3d 342 (S.D.N.Y. 2014) ............................................................................... 11

*Castellano v. Bd. of Tr. of Police Officers' Variable Supplements Fund*,
937 F.2d 752 (2d Cir. 1991)........................................................................................... 17

*Chambers v. Time Warner*, Inc.,
282 F.3d 147 (2d Cir. 2002)............................................................................................. 3

*Ciambriello v. Cnty. of Nassau,*
    292 F.3d 307 (2d Cir. 2002).................................................................. 9

*Clissuras v. City of New York,*
    131 A.D.2d 717 (2d Dep't 1987)......................................................... 18

*Cornetta v. Town of Highlands,*
    18-CV-12070 (KMK), 2020 WL 363042 (S.D.N.Y. Jan. 22, 2020) .............. 14

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991)..................................................................... 3

*Curiano v. Suozzi,*
    63 N.Y.2d 113 (1984) ......................................................................... 23

*D'Antonio v. Metro. Transp. Auth.,*
    06-CV-4283 (KMW), 2010 WL 1257349 (S.D.N.Y. Mar. 31, 2010) ........... 18

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006)............................................................... 14

*Dillard v. SEIU Local 32BJ,*
    15-CV-4132 (CM), 2015 WL 6913944 (S.D.N.Y. Nov. 6, 2015).............. 20

*Dolce v. Bayport–Blue Point Union Free School Dist.,*
    286 A.D.2d 316 (2d Dep't 2001)......................................................... 18

*Drexel Burnham Lambert, Inc. v. Saxony Heights Realty Assoc.,*
    777 F.Supp. 228 (S.D.N.Y.1991) ........................................................ 12

*Figueroa v. Foster,*
    864 F.3d 222 (2d Cir. 2017)............................................................... 21

*Ford v. D.C. 37 Union Local 1549,*
    579 F.3d 187 (2d Cir. 2009)............................................................... 16

*Forrest v. Jewish Guild for the Blind,*
    3 N.Y.3d 295 (2004) ......................................................................... 21

*Friehofer v. Hearst Corp.,*
    65 N.Y.2d 135 (1985) ................................................................... 23, 24

*Gear v. Dep't of Educ.,*
    472 Fed. Appx. 67 (2d Cir. 2012) ....................................................... 16

*Goel v. Bunge, Ltd*,
    820 F.3d 554 (2d Cir. 2016)................................................................. 3

*Gross v. Waywell*,
    628 F.Supp.2d 475 (S.D.N.Y.2009) ................................................... 10

*Havell v. Islam*,
    292 A.D.2d 210 (1st Dep't 2002) ...................................................... 19

*Hecht v. Comm. Clearing House*,
    713 F.Supp. 72 (S.D.N.Y. 1989) ...................................................... 14

*Henry v. NYC Health & Hosp. Corp.*,
    18 F.Supp.3d 396 (S.D.N.Y. 2014) ................................................... 21

*Herington v. Civ. Serv. Emp. Ass'n, Inc.*,
    130 A.D.2d 961 (4th Dep't 1987).................................................. 16, 18

*Hilow v. Rome City Sch. Dist.*,
    14-CV-288 (TJM), 2015 WL 893050 (N.D.N.Y. Mar. 2, 2015)................... 15

*Ifill v. New York State Court Off. Ass'n*,
    655 F.Supp.2d 382 (S.D.N.Y. 2009) ................................................. 16

*Leblanc v. Security Services Unit Employees of New York State Law Enforcement Officers Union, Council 82, AFSCME, AFL-CIO*,
    278 A.D.2d 732 (3d Dep't 2000) ...................................................... 18

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)............................................................. 12

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015).......................................................... 21, 22

*Martin v. Curran*,
    303 N.Y. 276 (1951) .............................................................. 19, 20, 23

*McClary v. CSEA*,
    133 A.D.2d 522 (4th Dep't 1987)...................................................... 18

*McDonald v. Schencker*,
    18 F.3d 491 (7th Cir. 1994) ............................................................. 16

*McLaughlin v. Anderson*,
    962 F.2d 187 (2d Cir.1992).............................................................. 12

*Morrison v. Nat'l Broadcasting Co.*,
    19 N.Y.2d 453 (1967) ................................................................................. 19

*Morton v. Mulgrew*,
    144 A.D.3d 447 (1st Dep't 2016) .............................................................. 20

*Operaji v. United Fed'n of Teachers*,
    418 F.Supp.2d 139 (E.D.N.Y. 2006) ........................................................ 21

*Palladino v. CNY Centro, Inc.*,
    23 N.Y.3d 140 (2014) ................................................................................. 20

*Roman v. City Employees Local 237*,
    300 A.D.2d 142 (1st Dep't 2002) .............................................................. 18

*Rosenson v. Mordowitz*,
    11-CV-6145 (JPO), 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012) .............. 10

*Rotella v. Wood*,
    528 U.S. 549 (2000) ................................................................................... 14

*Schoolcraft v. City of New York*,
    133 F.Supp.3d 563 (S.D.N.Y. 2015) ........................................................ 24

*Segal v. City of New York*,
    368 F.Supp.2d 360 (S.D.N.Y. 2005), *aff'd*, 459 F.3d 207 (2d Cir. 2006) ......... 9

*Shetiwy v. Midland Credit Mgmt.*,
    15 F.Supp.3d 437 (S.D.N.Y. 2014) .......................................................... 11

*Spool v. World Child Int'l Adoption Ag.*,
    520 F.3d 178 (2d Cir. 2008) ...................................................................... 10

*U.S. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*,
    941 F.2d 1292 (2d Cir. 1991) ...................................................................... 9

*United States v. Turkette*,
    452 U.S. 576 (1981) ................................................................................... 11

*Vicon Fiber Optics Corp. v. Scrivo*,
    201 F. Supp.2d 216 (S.D.N.Y. 2002) ...................................................... 14

*Whitehurst v. 1199SEIU United Healthcare Workers E.*,
    928 F.3d 201 (2d Cir. 2019) ...................................................................... 21

*Wigdor v. SoulCycle, LLC,*
    139 A.D.3d 613 (1st Dep't 2016) ................................................................ 24

*Williams v. New York City Department of Education,*
    17-CV-1996 (AJN), 2018 WL 4735713 (S.D.N.Y. Sept. 29, 2018) ........................ 21, 22

*Willis v. Mullins,*
    517 F.Supp.2d 1206 (E.D. Cal. 2007) .......................................................... 14

## Statutes

18 U.S.C. § 1961 .......................................................................................... 15

18 U.S.C. § 1962 ..................................................................................... 10, 14

18 U.SC. § 1962(c) ...................................................................................... 10

28 U.S.C. § 1367(c) ...................................................................................... 17

29 U.S.C. § 185 ........................................................................................... 15

42 U.S.C. § 1983 ................................................................................ 1, 7, 9, 15

Fed. R. Civ. Pro. Rule 12(b)(1) ........................................................................ 1

Fed. R. Civ. Pro. Rule 12(b)(6) ........................................................................ 1

Fed. R. Civ. Pro. Rule 9(b) ........................................................................ 12, 13

Labor Management Relations Act, 1947 29 U.S.C. §§ 141, *et seq.* ("LMRA") ................ 16

N. Y. CPLR § 217(2)(a) ................................................................................. 17

N. Y. General Associations Law § 13 ................................................................. 19

N.Y. CPLR § 215 .......................................................................................... 19

New York City Human Rights Law,
    New York City Admin. Code §§ 8-101, *et seq.* ("NYCHRL") ............................... passim

New York State Human Rights Law,
    N.Y. Executive Law  §§ 290, *et seq.* ("NYSHRL") ...................................... passim

Public Employees' Fair Employment Act,
    N.Y. Civ. Serv. Law §§ 200, *et seq.* ............................................................. 3

Racketeer Influenced and Corrupt Organizations Act,
18 U.S.C. §§ 1961, *et seq.* ("RICO")........................................................................ passim

# PRELIMINARY STATEMENT

Defendant United Federation of Teachers ("UFT") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint (Doc. No. 17) filed by plaintiff Michele Valvo ("Plaintiff" or "Ms. Valvo") pursuant to Fed. R. Civ. Pro. Rules 12(b)(1) and (6). The Amended Complaint alleges claims for relief under 42 U.S.C. § 1983, civil Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §§ 1961, *et seq.* ("RICO"), and various state law causes of action related to Plaintiff's prior employment by the New York City Department of Education ("DOE"). Despite Plaintiff's numerous claims for relief, the Amended Complaint is essentially a non-meritorious breach of the duty of fair representation claim against the UFT. As repeatedly held by the Second Circuit, this Court lacks subject matter jurisdiction over claims by public employees against their unions for breach of the duty of fair representation. Instead, Plaintiff has tried to dress up baseless Section 1983 and RICO claims in a bald attempt to ground subject matter jurisdiction where none exists.

Plaintiff's First, Second and Fourth claims for relief are the only ones expressly grounded in federal law. Plaintiff's First and Second claims for relief, which allege that Plaintiff's employment and New York City license were terminated without due process under 42 U.S.C.§ 1983, should be dismissed against the UFT for failure to state a claim, as it was not a state actor.[1] The Amended Complaint clearly establishes that the DOE did the actions complained of in the First and Second claims (i.e., terminated Plaintiff's employment and New York City license). Since the UFT was not a state actor, it cannot be liable to Plaintiff under § 1983. Further, the Amended Complaint sets forth no plausible allegation that the UFT acted under the color of state

---

[1] Plaintiff's First Amended Complaint asserts the Second Claim for Relief against "All Defendants," although it appears to relate solely to the DOE. Regardless, it fails for the same reason as the First Claim for Relief.

law.  Plaintiff's Fourth claim for relief, for civil RICO violations against the UFT, fails to allege any of the elements necessary for a RICO claim.

Plaintiff's Third and Sixth claims for relief, as against the UFT for negligence and breach of contract regarding its representation of Plaintiff, should be dismissed for lack of subject matter jurisdiction.  A union member may not sue her union for negligence or breach of contract arising out of obligations created by a collective bargaining agreement; the sole remedy is an action for breach of the duty of fair representation.  Federal courts lack subject matter jurisdiction over duty of fair representation claims by public employees against their unions.  Therefore, Plaintiff's Third and Sixth claims for relief can only be construed as breach of duty of fair representation claims under New York law.  Since Plaintiff has no federal claims against the UFT, this Court should decline to exercise supplemental jurisdiction over any state law claims and dismiss the Amended Complaint.

In addition, Plaintiff's Third, Fifth, Sixth, and Seventh claims against the UFT fail to state a claim under New York law.  Plaintiffs' Third and Sixth claims are time-barred under the applicable four-month statute of limitations.  In addition, Plaintiff's Seventh claim is mostly time-barred by the applicable one-year statute of limitations.  The Amended Complaint also lacks sufficient factual allegations to sustain breach of duty of fair representation or tort claims against the UFT, an unincorporated association, as she has not alleged that any act or omission against her was ratified by each and every member of the association.  Finally, Plaintiff's Fifth claim for relief, under the New York State Human Rights Law, N.Y. Executive Law §§ 290, *et seq*. ("NYSHRL") and New York City Human Rights Law, New York City Admin. Code §§ 8-101, *et seq*. ("NYCHRL") likewise fail as Plaintiff has not alleged the UFT discriminated against the plaintiff because of her membership in a protected class.

# STATEMENT OF RELEVANT FACTS

## A.     Plaintiff's Employment by DOE[2]

From 2002 until February 13, 2018, DOE employed Plaintiff as a paraprofessional. Amended Complaint at ¶¶ 10, 14.[3] Plaintiff was most recently assigned to P.S. 23, located at 30 Natick Street, Staten Island, New York. C¶15.

## B.     UFT's Relationship with DOE and Plaintiff

UFT is an unincorporated association existing pursuant to the N.Y. General Associations Law. Declaration of Michael J. Del Piano in Support of Defendant UFT's Motion to Dismiss the Complaint, dated March 9, 2020 at ¶4.[4] UFT is also an employee organization pursuant to the Public Employees' Fair Employment Act, N.Y. Civ. Serv. Law §§ 200, *et seq.* ("Taylor Law") and is the exclusive bargaining representative for, among other positions, all paraprofessionals employed by DOE. Del Piano Decl.¶5. UFT has approximately 183,000 in-service and retired members. Del Piano Decl.¶6. During all times relevant herein, UFT and DOE were parties to a collective bargaining agreement, effective from November 1, 2009 through November 30, 2018

---

[2] The facts set forth in the Amended Complaint, except for conclusory statements or legal conclusions, are presumed to be true for purposes of the instant motion only to the extent required by law.

[3] Further citation to the Amended Complaint will appear as "C.¶__".

[4] Further citation to the Declaration of Michael J. Del Piano in Support of Union Defendants' Motion to Dismiss, dated April 30, 2020, will appear as "Del Piano Decl.¶__." or "Decl. Ex. _". In evaluating a complaint on a motion to dismiss, the court may also consider documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit. *Chambers v. Time Warner*, Inc., 282 F.3d 147, 153 (2d Cir. 2002); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991); *Goel v. Bunge, Ltd*, 820 F.3d 554 (2d Cir. 2016).

("CBA"). Del Piano Decl.¶8; Ex. "C". As a paraprofessional, Plaintiff was a member of the bargaining unit represented by UFT.

### C. Plaintiff's Suspension and Termination Regarding a Corporal Punishment and Verbal Abuse Incident with a Special Needs Student at P.S. 23

On January 26, 2018, P.S. 23 Principal, Paul Proscia ("Proscia") summoned Plaintiff to his office and informed Plaintiff that she was suspended without pay and benefits pending an investigation into allegations that Plaintiff verbally and physically abused a special needs child at P.S. 23. C.¶¶17-18. Plaintiff filed a grievance over the suspension without pay. C.¶20.

On February 2, 2018, Plaintiff had a disciplinary meeting with Proscia, where she was presented with the charges against her, permitted to review the written statements of individuals interviewed during the investigation against her, and allowed to provide her own written statement regarding the alleged incident. C.¶21. Proscia met with Plaintiff on February 13, 2018, informed her that the investigation was upheld, and that she was terminated effective that day. C.¶22; *see also*, Del Piano Decl. at Ex. "D".

As a result of her termination by the DOE, Plaintiff asserts the DOE placed a "problem code" on her file with its Office of Personnel Investigations ("OPI"). C.¶3. Plaintiff also asserts the DOE placed a "red flag" on to her fingerprints and file. C.¶3. Plaintiff further asserts the DOE terminated her New York City licenses when it terminated her, and as a result her New York State certifications have also suffered a diminishment in value. C.¶4. Plaintiff noted that there is no procedure under the CBA to remove the "red flag" from her fingerprints. C.¶5.

### D. Plaintiff's Grievance Over Her Termination

Plaintiff filed a Step 1 grievance after the DOE terminated her employment. C.¶23; *see also*, Del Piano Decl. Ex. "E". Plaintiff's grievance alleged a violation of CBA Article 23, entitled Discharge Review Procedures, and Article 32, entitled Matters Not Covered. Del Piano Decl. Ex.

4

"E". Article 23 provides, in pertinent part, that DOE's policy regarding "the discharge of an

employee should be based on good and sufficient reason and that such action should be taken by

the supervisor having such authority only after he/she has given due consideration to the matter."

Del Piano Decl. Ex. "C", at p. 39. Article 23 further provides:

> If an employee with more than the equivalent of one school term of
> continuous service…is discharged, he/she shall, upon his/her
> request, be given a written notice of discharge and a statement of the
> general reasons for such action. Such employee will also, upon
> his/her request, be afforded an opportunity for a prompt and careful
> review of the discharge in accordance with provisions set forth in
> Article Twenty-Two [Complaint and Grievance Procedures] of the
> CBA.

Del Piano Decl. Ex. "C" at p. 39. The Step 1 grievance hearing over Plaintiff's termination was

held on February 26, 2018. C.¶¶ 23-24. On February 28, 2018, DOE upheld Plaintiff's termination

for physical and verbal abuse after the Step 1 grievance hearing. C.¶24; *see also*, Del Piano Decl.

Ex. "F".

Plaintiff subsequently sought a Step 2 grievance, which was heard on April 10, 2018.

C.¶25; *see also*, Del Piano Decl. Ex. "G". The Step 2 grievance hearing was heard by DOE

Chancellor's Representative Alan R. Lichtenstein ("Lichtenstein"). Del Piano Decl. Ex. "H".

Plaintiff was represented at the Step 2 grievance hearing by UFT representative John Torres. Del

Piano Decl. Ex. "H". After the Step 2 grievance hearing, Lichtenstein concluded that the

allegations against Plaintiff were substantiated. Del Piano Decl. Ex. "H". Specifically,

Lichtenstein noted:

> The criteria for discharge of an employee are good and sufficient
> reason and due consideration. The undersigned concludes that
> Principal Proscia had good and sufficient reason based on Grievant
> Valvo's history of poor work performance and substantiated
> incidents of verbal abuse and corporal punishment. Grievant Valvo
> was given due consideration. The [UFT's] entire presentation was
> based on challenging the fairness and accuracy of the witness

> statements and challenging Principal Proscia's judgment.
> Therefore, the undersigned concludes that there was no violation of
> Article 23 (Discharge Review Procedure).

Del Piano Decl. Ex. "H". DOE Chancellor Richard Carranza ("Chancellor Carranza") approved

Lichtenstein's determination and approved Plaintiff's termination. C.¶26; *see also*, Del Piano

Decl. Ex. "H".

### E. UFT Decision to Not Pursue Arbitration and Plaintiff's Appeals

In April 2018, Plaintiff requested the UFT pursue arbitration over her termination. C.¶27.

On October 12, 2018, the UFT informed Plaintiff it did not believe her grievance was meritorious

and declined to demand arbitration. C.¶28; *see also*, Del Piano Decl. Ex. "I." The UFT based its

decision on a review of the investigation and concluded that arbitration would not be successful.

Del Piano Decl. Ex. "I". The UFT also notified Plaintiff that she could appeal its decision. Del

Piano Decl. Ex. "I".

Plaintiff appealed the UFT's decision to not pursue arbitration over her termination, which

was denied on December 5, 2018. C.¶29; *see also,* Del Piano Decl. Ex. "J". The UFT notified

Plaintiff that it still did not believe her grievance could be successfully pursued at arbitration. Del

Piano Decl. Ex. "J". The UFT notified Plaintiff she could appeal its decision to the UFT's

Administrative Committee ("Ad Com") for a redetermination on whether to pursue arbitration over

her termination. Del Piano Decl. Ex. "J".

On February 25, 2019, Plaintiff appealed to Ad Com. C.¶30. On April 18, 2019, UFT

Director of Staff LeRoy Barr notified Plaintiff that Ad Com declined to proceed to arbitration over

her termination. C.¶30; *see also*, Del Piano Decl. Ex. "K". Ad Com determined arbitration would

not be successful to overcome the standards for termination under the CBA. Del Piano Decl. Ex.

"K". Specifically, Ad Com determined the UFT could not successfully argue the NYCDOE did

not give Plaintiff's matter due consideration. Del Piano Decl. Ex. "K". Ad Com further determined the UFT could not successfully argue that Plaintiff's actions, as substantiated, did not warrant good and sufficient reason to terminate Plaintiff's employment given her prior disciplinary history. Del Piano Decl. Ex. "K".

### F. Instant Lawsuit

Plaintiff filed the instant action on or about September 19, 2019. Del Piano Decl. Ex. "A". On or about March 10, 2020, Plaintiff filed the Amended Complaint. Del Piano Decl. Ex. "B". Plaintiff asserts several claims for relief. The First and Second Claim for relief are against the DOE and UFT pursuant to 42 U.S.C. § 1983, and allege that DOE and UFT terminated Plaintiff's employment without providing her procedural due process, an opportunity to be heard, and served to deprive her of a liberty interest. C.¶¶ 36-45. The Third claim for relief is against the DOE and UFT for negligence related to the termination of Plaintiff's certification without due process, the investigation into Plaintiff's alleged misconduct, and the DOE's subsequent decision to terminate Plaintiff's employment. C¶¶46-51. The Fourth claim for relief asserts a claim for violation of RICO. C¶¶52-57. The Fifth claim for relief alleges violations by all defendants of New York State and City Human Rights Laws. C¶¶58-61. The Sixth claim for relief alleges a breach of contract claim solely against the UFT. C¶¶62-65. Finally, the Seventh claim for relief alleges that the defendants' actions constitute a *prima facie* tort. C¶¶66-69.

**ARGUMENT**

**POINT I**

**THE FIRST AND SECOND CLAIMS FOR RELIEF AGAINST THE UFT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE THE UFT DID NOT TERMINATE PLAINTIFF'S EMPLOYMENT, WAS NOT A STATE ACTOR, AND DID NOT ACT UNDER THE COLOR OF STATE LAW**

Plaintiff's First and Second claims for relief, that the UFT terminated her employment without providing due process, should be dismissed for failure to state a claim for which relief can be granted. To defeat a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678. If Plaintiff has not "nudged his claim across the line from conceivable to plausible, his complaint must be dismissed." *Twombly*, 550 U.S. at 570. A court must accept as true all of the allegations in the complaint, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

As a threshold matter, Plaintiff has not set forth a plausible claim that the UFT terminated her employment. The UFT did not employ Plaintiff and therefore could not terminate her. Rather, the Amended Complaint and supporting documents demonstrate that the DOE was Plaintiff's employer and it terminated her employment. Proscia terminated Plaintiff's employment on

February 13, 2018.  C.¶22; *see also*, Del Piano Decl. Ex. "C".  Proscia then denied the Step 1 grievance on February 28, 2018, which upheld Plaintiff's termination.  C¶23; *see also*, Del Piano Decl. Ex. "D".  Lichtenstein then denied the Step 2 grievance on April 26, 2018, which again upheld Plaintiff's termination, and was approved by Chancellor Carranza.  C.¶26; *see also*, Del Piano Decl. Ex. "G".  Similarly, the Amended Complaint establishes that the DOE terminated Plaintiff's New York City license.  C¶¶3,4, and 41.  Moreover, Plaintiff has not set forth any fact to support her entitlement to a pre-deprivation hearing, or how the UFT in any way inhibited her ability to have such pre-deprivation hearing.  *See Segal v. City of New York*, 368 F.Supp.2d 360, 362 n.1 (S.D.N.Y. 2005)  (plaintiff "ha[d] no due process claim based on any property interest, since she was a probationary employee with no constitutionally protected property interest in her employment"), *aff'd*, 459 F.3d 207 (2d Cir. 2006).

In addition, Plaintiff did not plausibly allege that the UFT is a state actor or acted under the color of state law so as to be liable under 42 U.S.C. § 1983.  *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *Vega v. Hempstead Union Free Sch. Dist.,*  801 F.3d 72,87-88 (2d. Cir. 2015)*.*  The Constitution only regulates the government, not private entities.  *U.S. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1295-1296 (2d Cir. 1991) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).    Labor unions are not state actors.  *See Ciambriello*, 292 F.3d at 323.   Plaintiff further failed to allege facts to demonstrate that the UFT acted under the color of state law, or that the UFT conspired with any state actors to deprive her of her rights.  *Id.* at 324-325.

## POINT II

### PLAINTIFF UTTERLY FAILS TO PLEAD ANY FACTS IN SUPPORT OF HER CLAIM UNDER RICO

Plaintiff's Amended Complaint gratuitously adds a claim solely identified as "Civil Rico"  C. ¶¶52-57.  Plaintiff does not make even a cursory attempt to set forth the elements necessary to

state such a claim, nor does even the most generous reading of Plaintiff's Amended Complaint set forth facts to support this claim.

### A. Plaintiff Fails to Allege a Single Element of a RICO Violation

In order to state a claim under the Civil Rico statute, 18 U.SC. § 1962(c). a plaintiff must allege

> as to each defendant, that while employed by or associated with an enterprise engaged in interstate or foreign commerce, and through the commission of at least two predicate acts constituting a 'pattern of racketeering,' the defendant directly or indirectly conducted or participated in the conduct of the affairs of such enterprise." *Gross v. Waywell,* 628 F.Supp.2d 475, 485 (S.D.N.Y.2009) (citing 18 U.S.C. § 1962(c); *Spool v. World Child Int'l Adoption Ag.,* 520 F.3d 178, 183 (2d Cir. 2008)). The specific predicate acts that constitute racketeering activity are enumerated in the statute and include mail fraud (§ 1341) and wire fraud (§ 1343). *See* 18 U.S.C. § 1961(1).

*Rosenson v. Mordowitz,* 11-CV-6145 (JPO), 2012 WL 3631308, at *4 (S.D.N.Y. Aug. 23, 2012).

Plaintiff has failed to so much as allege a single one of these elements. The Amended Complaint contains no allegations concerning any "enterprise" to which either defendant is purported to be associated. Nor does Plaintiff allege predicate acts "as to each defendant," stating only summarily that "Defendants material misrepresentations and concealment of material facts were made intentionally and/or with a reckless disregard for the truth, to carry out a common scheme, artifice and fraud to unjustly enrich the Defendants." While read in the broadest light one might, at most, consider this an assertion of a claim of fraud, it is certainly not a claim of wire fraud or mail fraud. Moreover, plaintiff has not alleged any injury caused by virtue of the claimed RICO violation.

### B. Plaintiff Has Failed to Allege the Existence of an Enterprise

Identification of an enterprise is a threshold requirement of a RICO claim. An enterprise

is an "entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 577 (1981), and must be proven separately. The enterprise

> may consist of 'a group of persons associated together for a common purpose of engaging in a course of conduct.' However, a plaintiff's 'conclusory naming of a string of entities does not adequately allege an enterprise.' Furthermore, 'under the so-called 'distinctness' requirement, ... a plaintiff must 'allege ... the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.'

*Shetiwy v. Midland Credit Mgmt.*, 15 F.Supp.3d 437, 443 (S.D.N.Y. 2014) (citations omitted). Here, Plaintiff has not even so much as alleged the existence of an enterprise, identifying only the two named defendants in reference to the RICO claim. This alone serves to defeat Plaintiff's RICO claim. *See BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F.Supp.3d 342, 360 (S.D.N.Y. 2014).

### C. Plaintiff Has Failed to Allege Mail or Wire Fraud or Any Other Predicate Act

Plaintiff's Amended Complaint provides no specifics as to what the purported predicate acts related to her RICO claim might be. The Amended Complaint mentions certain communications from the UFT, though no indication is given as to how these were received, and in only one instance is a written communication of any kind referenced. *See* C.¶28 (UFT denied request for Step 3 Grievance and Arbitration); C.¶29 (UFT denied request for an appeal); C.¶30 (Ad Com letter denying request for arbitration). For the purposes of this motion only, Defendant UFT assumes that Plaintiff intended these to be the basis of a claim of mail or wire fraud, though Plaintiff has not said so. In any event, the allegations remain insufficient. This Court has held that "A violation of mail or wire fraud requires a showing of (1) a scheme or artifice to defraud and (2) a mailing or wire transmission in furtherance of that scheme." *Boritzer v. Calloway*, 10-

CV-6264 (JPO), 2013 WL 311013, at *6 (S.D.N.Y. Jan. 24, 2013) (citing 18 U.S.C. §§ 1341, 1343).

The Amended Complaint contains no allegation concerning any mailing or transmission in furtherance of any scheme and only the barest, most conclusory allegations concerning such scheme. Moreover, it is well established that "[I]n order for the deceit implicit in fraud to rise to the level of wire fraud in particular, "defendants must have used the . . .wires as a means to obtain money or property by means of false or fraudulent pretenses, representations, or promises or for purposes of executing a scheme to defraud." *Drexel Burnham Lambert, Inc. v. Saxony Heights Realty Assoc.,* 777 F.Supp. 228, 238 (S.D.N.Y.1991) (quotations omitted); *Boritzer*, 2013 WL 311013 at *6. Here, Plaintiff has failed utterly to allege how any of the communications from the UFT sought to, could have, or in fact did obtain anything at all of value from Plaintiff as the result of mail fraud, wire fraud, or any other course of conduct.

### D. Plaintiffs Amended Complaint Does Not Sufficiently Plead Fraud

In addition to alleging the elements of a RICO claim as set forth above, in alleging predicate acts of wire fraud or mail fraud, a plaintiff must plead fraud with particularity:

> RICO claims based on mail and wire fraud are subject to the heightened pleading standard established by Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992) (noting that Rule 9(b)'s heightened pleading standard applies where mail fraud is alleged as a RICO predicate offense). "[T]o comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006)

*Am. Fed'n of State, Cty. & Mun. Employees Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.,* 948 F.Supp.2d 338, 345–46 (S.D.N.Y. 2013). Here, the Plaintiff has not pleaded any

of the elements necessary to meet the heightened pleading standard of Federal Rule 9(b). Plaintiff

has not identified any particular statements which she asserts were fraudulent, nor has she indicated

why any such statements were fraudulent.[5]   Plaintiff has not identified who made any such

allegedly fraudulent statements.  Plaintiff has not stated when or where such allegedly fraudulent

statements were made.

In fact, reading Plaintiff's Amended Complaint in its broadest light, the only allegation

concerning any written statement by the UFT is set forth in paragraph 30 of the Amended

Complaint, which refers to a letter sent by the Ad Com grievance committee to Plaintiff.  Paragraph

30 summarily states that the letter contained "lies about the alleged misconduct," but does not

specify what said "lies" were nor explain how, if at all, said statements were fraudulent.

Finally, Plaintiff's Amended Complaint does not attempt to allege how any such

misrepresentations led to her injury.  Assuming for the sake of this motion only that each of the

communications from the defendants was as described by plaintiff in paragraphs 28-30 of her

Amended Complaint, there is no indication of how such representations caused her economic or

pecuniary loss.  The UFT's communications, at most, conveyed to Plaintiff decisions that had

already been made. They did not induce her to take any action, nor did she do so.

### E.   Plaintiff Does Not Allege Injury and Therefore Does Not Have Standing

In order to establish standing to bring a RICO claim, a plaintiff must not only adequately

plead a RICO violation, which she has not done, but must also allege that she has been injured by

---

[5] The only reference that could be remotely fraud-related is the statement in paragraph 30 of the Amended Complaint that the Ad Com denied her request for arbitration "with a shocking letter supporting their decision with lies", but the paragraph goes on to state that "The UFT does not have investigators, and therefore the information convicting the Plaintiff of wrong-doing came solely from the Department of Education," which appears to be a concession that to the extent the UFT's letter was not accurate, it was due to information they had received from the DOE and was not the result of any intended fraud.

virtue of a RICO violation. *See Hecht v. Comm. Clearing House*, 713 F.Supp. 72, 74 (S.D.N.Y. 1989) ("There are thus, two requirements for standing under [civil RICO]: (1) the plaintiff must show that there has been a violation of [18 U.S.C.] § 1962, and (2) he must show that his injury was caused by the violation."); *Cornetta v. Town of Highlands*, 18-CV-12070 (KMK), 2020 WL 363042, at *8 (S.D.N.Y. Jan. 22, 2020). RICO standing is a more rigorous standard than general standing under Article III. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). Civil rights violations and personal injuries do not fall within the statutory definition of racketeering activity. *See Willis v. Mullins*, 517 F.Supp.2d 1206, 1229-30 (E.D. Cal. 2007); *see also Annulli v. Panikkar*, 200 F.3d 189, 192 (3d Cir. 1999), *overruled on other grounds*, *Rotella v. Wood*, 528 U.S. 549 (2000) (torts and contract breaches are not racketeering activity under RICO).

Once again, reading Plaintiff's Amended Complaint in the light most favorable to her, the only possible statements to which she could be referring are the letters from the DOE and the UFT to her explaining the basis for her discontinuance and the UFT's determination not to take her case to arbitration. In neither case were these statements the source of any injury to plaintiff. At most, the source of the alleged injury to plaintiff was the DOE's decision to discontinue her – which is not a RICO predicate act and which the DOE has the authority to make – and the decision of the UFT not to take the matter to arbitration, which is also not a RICO predicate act and which the UFT has the authority to make. *See, e.g., Vicon Fiber Optics Corp. v. Scrivo*, 201 F.Supp.2d 216 (S.D.N.Y. 2002) (no RICO violation where a claimed injury happened, or could have happened even if alleged predicate acts by defendant had not occurred). At most, Plaintiff alleges that Defendants were engaged in a scheme to prevent plaintiff from retaining her position as a teacher.

This is not an actionable RICO claim.  *See, e.g. Hilow v. Rome City Sch. Dist*., 14-CV-288 (TJM), 2015 WL 893050, at *10 (N.D.N.Y. Mar. 2, 2015).

### F.  Plaintiff's RICO Allegation is a Bare Attempt to Establish Federal Jurisdiction

It is plain from the complete paucity of allegations concerning Plaintiff's purported RICO claims that the sole basis for including these claims is to attempt to establish federal jurisdiction. Plaintiff asserted a civil RICO claim solely to try to confer federal jurisdiction over her claims against the UFT.  C. ¶8 "This Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 18 USC (sic) § 1961 ("RICO") to hear suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, which may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  Notably, 18 U.S.C. § 1961, which contains the definitions for RICO, contains no such jurisdictional provision.  Further, Plaintiff's averment in this regard is nearly verbatim to Plaintiff's original complaint, which provided "This Court has jurisdiction pursuant to 29 U.S.C. § 185 to hear suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined by this chapter, or between any such labor organizations, which may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.  Jurisdiction is specifically conferred on this Court by Labor Management Relations Act, Section 301."  Del Piano Decl. Ex. "A" at ¶8.  As noted in Point III, *infra*, this Court does not have subject matter jurisdiction over labor disputes between public employees and their unions. As stated in Points III-VI *infra*, Plaintiff's remaining claims can only be construed under New York law. Furthermore, a plaintiff abuses the RICO

statute she tries to shoehorn an ordinary contractual dispute into a civil RICO claim. *See, e.g., McDonald v. Schencker*, 18 F.3d 491, 499 (7th Cir. 1994).This Court should not countenance Plaintiff's attempted abuse of process to confer subject matter jurisdiction and should dismiss the Amended Complaint.

### POINT III

**PLAINTIFF'S THIRD AND SIXTH CLAIMS FOR RELIEF, THAT THE UFT WAS NEGLIGENT OR COMMITTED BREACH OF CONTRACT IN ITS REPRESENTATION, SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION**

Plaintiff's Third and Sixth claims for relief, for negligence and breach of contract, can only be construed as claims of breach of the duty of fair representation against the UFT. *See Herington v. Civ. Serv. Emp. Ass'n, Inc.*, 130 A.D.2d 961, 962 (4th Dep't 1987) (union member has no cause of action against union for negligence or breach of contract related to performance of duties under a collective bargaining agreement; sole remedy is action for breach of duty of fair representation); *see also Ifill v. New York State Court Off. Ass'n*, 655 F.Supp.2d 382, 393 (S.D.N.Y. 2009). It is settled law in the Second Circuit that federal courts do not have subject matter jurisdiction over duty of fair representation claims that involve public employees. *See Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187 (2d Cir. 2009) (federal courts lack subject matter jurisdiction over duty of fair representation claims brought by public employees). In *Ford*, the Second Circuit noted that "we deem it appropriate to issue a published opinion and thereby make clear beyond peradventure that this is the law of our Circuit." *Id; see also, Gear v. Dep't of Educ.*, 472 Fed. Appx. 67 (2d Cir. 2012) (Circuit court affirmed dismissal of federal duty of fair representation claims a Department of Education employee made against the UFT); *Baumgart v. Stony Brook Children's Serv., P.C.*, 249 Fed. Appx. 851, 852-853 (2d Cir. 2007). Like the plaintiff in *Gear*, Ms. Valvo was employed by the DOE and represented by the UFT. Therefore, the Third and Sixth claims for relief must be

dismissed against the UFT under Fed. R. Civ. Pro. 12(b)(1) because there is no subject matter jurisdiction.

## POINT IV

**PLAINTIFF'S THIRD, SIXTH AND SEVENTH CLAIMS FOR RELIEF AS AGAINST UFT, IF CONSTRUED UNDER NEW YORK LAW, ARE TIME-BARRED AND LACK SUFFICIENT FACTUAL ALLEGATIONS UNDER THE *MARTIN* RULE**

As stated in Point III, *supra*, Plaintiff's Third and Sixth claims, taken together, may only be construed as claims for breach of the duty of fair representation, for which the Court lacks subject matter jurisdiction. To the extent these claims for relief as against the UFT are construed under New York law, the UFT respectfully requests that the Court decline to exercise supplemental jurisdiction over any such state law claims if no such federal claims remain against it. Under 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." *See Castellano v. Bd. of Tr. of Police Officers' Variable Supplements Fund*, 937 F.2d 752 (2d Cir. 1991). In any event, Plaintiff's Third, Sixth and Seventh claims are time-barred and lack sufficient factual allegations under New York law to state a plausible claim.

Any claim for breach of the duty of fair representation under New York common law is time-barred. The statute of limitations for such claims is four months from when the employee knew or should have known that the breach occurred. N. Y. CPLR § 217(2)(a). Plaintiff cannot side-step a four month statute of limitations by trying to dress up a duty of fair representation claim under a different theory of law. This Court has held that under New York law, "if a plaintiff suing for breach of duty of fair representation raises additional common law claims based on the same factual allegations as the fair representation claim, the additional claims are subject to the four-month statute of limitations." *D'Antonio v. Metro. Transp. Auth.,* 06-CV-4283 (KMW), 2010 WL

17

1257349, at *7 (S.D.N.Y. Mar. 31, 2010), citing *Roman v. City Employees Local 237,* 300 A.D.2d 142, 142 (1st Dep't 2002); *Dolce v. Bayport–Blue Point Union Free School Dist.,* 286 A.D.2d 316, 316–17 (2d Dep't 2001); *Clissuras v. City of New York,* 131 A.D.2d 717, 718 (2d Dep't 1987). As this Court has explained, the reason for this rule is that the plaintiff should not be permitted to characterize a claim for breach of duty of fair representation as a different claim, in order to avoid the four-month time bar. *D'Antonio*, 2010 WL 1257349 at *7; *see also Roman,* 300 A.D.2d at 142 ("The expedient of characterizing a claim for breach of the duty of fair representation as one for breach of contract is unavailing to avoid the four-month limitations period ...."); *Dolce,* 286 A.D.2d at 316 (2d Dep't 2001 (breach of contract); *McClary v. CSEA*, 133 A.D.2d 522 (4th Dep't 1987) (negligence); *Clissuras* 131 A.D.2d 717 (causes of action as involving fraud, conspiracy, breach of contract, breach of fiduciary duty and negligence), *Herington,* 130 A.D.2d at 962 (breach of contract and negligence).

Plaintiff alleged that a problem code was put on her file when she was terminated on February 13, 2018. C.¶3. Plaintiff also alleged that the problem code resulted in her New York City licenses being terminated and her New York State certificates being diminished in value. C.¶3. The Complaint further states that the CBA contains no process to remove the problem code. C.¶5. Any possible claim for breach of the duty of fair representation related to these items accrued on February 13, 2018. Plaintiff commenced the instant action on September 7, 2019, well beyond the four-month statute of limitations to challenge the UFT's actions with regard to any of these items. *See Leblanc v. Security Services Unit Employees of New York State Law Enforcement Officers Union, Council 82, AFSCME, AFL-CIO*, 278 A.D.2d 732 (3d Dep't 2000).

Similarly, Plaintiff's allegation that the UFT was negligent when it declined to pursue arbitration over her termination is also time-barred. The UFT notified Plaintiff on April 18, 2019

that Ad Com would not pursue arbitration over her termination. The four-month statute of limitations for a claim regarding UFT's decision to not pursue arbitration over Plaintiff's termination expired on August 18, 2019. Plaintiff commenced this matter on September 7, 2019, and her claim is time-barred. *Id.*

In addition, to the extent Plaintiff's allegations are construed as part of her claim for *prima facie* tort, such claims are governed by a one-year statute of limitations. N.Y. CPLR § 215; *see also Morrison v. Nat'l Broadcasting Co.*, 19 N.Y.2d 453, 459 (1967) (claim for damages to reputation governed by one year statute of limitations not affected by labeling claim one for *prima facie* tort); *see also Havell v. Islam*, 292 A.D.2d 210 (1st Dep't 2002). Therefore, any act occurring prior to September 7, 2018 for purposes of *prima facie* tort is also time-barred.

Plaintiff further failed to plead sufficient allegations to state a claim against the UFT for breach of the duty of fair representation or prima facie tort under New York common law. To succeed on such a claim, Plaintiff is required to plead and prove that every UFT member ratified the acts and/or omissions allegedly taken against her. *See Martin v. Curran*, 303 N.Y. 276 (1951). In *Martin*, a libel case against an unincorporated association labor union, like NYSUT and UFT, the Court of Appeals, interpreting N.Y. General Associations Law § 13, held that an action against an unincorporated association, or its officers, could not be maintained if it is not pleaded and proven that each individual member of the unincorporated association authorized or ratified the action complained of. *Id*. at 280. It does not matter whether the claim arises out of contract or tort. *Id*. at 281-282. The theory underlying *Martin* is that

> A voluntary, unincorporated association is neither a partnership nor a corporation. It is not an artificial person, and has no existence independent of its members. No agency of one member for another is implied. A part of the members of a voluntary organization cannot bind the others before the act which it is claimed binds them is done, or they, with full knowledge of the facts, ratify and adopt it.

19

*Id.* at 280. (citations and quotations omitted)The New York Court of Appeals recently reaffirmed *Martin* in *Palladino v. CNY Centro, Inc.*, 23 N.Y.3d 140 (2014); *see also, Morton v. Mulgrew*, 144 A.D.3d 447, 448 (1st Dep't 2016).

The UFT is an unincorporated association with approximately 183,000 in-service and retired members. The Complaint plainly fails to allege each and every member of the UFT ratified the acts/omissions set forth therein. Moreover, it is a practical impossibility that Plaintiff would ever be able to prove each and every member of the UFT so ratified the acts/omissions set forth in the Complaint that it would be futile to permit her to file a further amended complaint.

Therefore, Plaintiff's Third, Sixth, and Seventh claims against the UFT are time-barred or otherwise fatally deficient, and should be dismissed.

## POINT V

### PLAINTIFF CLAIMS UNDER NYSHRL AND NYCHRL ARE PREMPTED BY THE DUTY OF FAIR REPRESENTATION AND THERE IS NO PLAUSIBLE ALLEGATION THAT THE UFT DISCRIMINATED AGAINST PLAINTIFF BECAUSE OF HER MEMBERSHIP IN A PROTECTED CLASS

Plaintiff's Fifth claim for relief asserts claims under NYSHRL and NYCHRL. The Amended Complaint does not specify the basis for this claim, other than to say "The defendants' actions unlawfully discriminated against the Plaintiff. . ." As an initial matter, this Court should find that Plaintiff's NYSHRL and NYCHRL claims are pre-empted by her claims for breach of the duty of fair representation. As pleaded, Plaintiff is evidently relying on the same facts to assert both her NYSHRL and NYCHRL claims and her duty of fair representation claims. Because the duty of fair representation forbids discrimination and retaliation against Union members, this Court has dismissed such claims. *See, e.g., Dillard v. SEIU Local 32BJ*, 15-CV-4132 (CM), 2015 WL 6913944, at *9 (S.D.N.Y. Nov. 6, 2015) (collecting cases); *see also Whitehurst v. 1199SEIU*

*United Healthcare Workers E.*, 928 F.3d 201, 209 (2d Cir. 2019)(where a court, in considering NYSHRL claims, would have to interpret the CBA, such claims are preempted by the duty or fair representation set forth in Section 301 of the Labor Management Relations Act); *but see Figueroa v. Foster*, 864 F.3d 222 (2d Cir. 2017) (declining to find a blanket preemption of state law discrimination claims solely on the basis of the availability of a federal law claim for breach of the duty of fair representation).

Even if the NYSHRL and NYCHRL claims are considered on the merits, the Amended Complaint lacks any factual allegation to suggest the UFT discriminated against Plaintiff because of her membership in any protected class. Instead, the Amended Complaint consists solely of conclusory statements and legal conclusions, which are insufficient to pass the minimum threshold to survive a motion to dismiss under Fed. R. Civ. Pro. Rule 12(b)(6).

To establish a claim against a union under Title VII or ADEA, and therefore the NYSRHL, a plaintiff must show that the union breached its duty of fair representation, and that the breach was motivated by unlawful discrimination. *See Operaji v. United Fed'n of Teachers*, 418 F.Supp.2d 139, 147 (E.D.N.Y. 2006) (Title VII); *see also Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305 fn. 3 (2004) (standards under NYSHRL are the same as Title VII); *Williams v. New York City Department of Education*, 17-CV-1996 (AJN), 2018 WL 4735713 at *8 (S.D.N.Y. Sept. 29, 2018) (ADEA); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 413 (S.D.N.Y. 2014) (same). A plaintiff does not have to allege a prima facie case of discrimination, but there must at least be allegations sufficient for plausible support that there was discriminatory motivation. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *Vega,*, 801 F.3d at 85-86. Plausibility requires that a plaintiff plead enough facts to give rise to an inference of unlawful discrimination. *Vega*, 801 F.3d at 87. A plaintiff can do this by "alleging facts that

directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* (citing *Littlejohn*, 795 F.3d at 310). While the NYCHRL may be construed more liberally, at a minimum Plaintiff would still be required to allege facts to plausibly suggest she was treated less well at least in part for a discriminatory reason. *See Benzinger v. Lukoil Pan Americas, LLC*, 16-CV-8533 (PAE), 2020 WL 1322478 (S.D.N.Y. Mar. 20, 2020).

The Amended Complaint does not contain any facts, direct or indirect, to even suggest that the UFT was motivated in any way by animus toward Plaintiff because of her membership in a protected class. In fact, the Amended Complaint does not allege that Plaintiff was a member of any protected class, at all. Paragraph 59, the only paragraph that addresses Plaintiff's status in any class provides solely that "The defendants' actions unlawfully discriminated against the Plaintiff and subjected her to harm for no lawful reason other than the reckless collusion as a result of her age and seniority." The Amended Complaint does not state Plaintiff's age nor establish that she in a protected class as a result of her age. Nor does Plaintiff's Amended Complaint make any allegation that the UFT had any knowledge of her age. And, "seniority" is simply not a protected class under any of discrimination statutes.

The failure to allege membership in a protected class is fatal to Plaintiff's NYSHRL and NYCHRL claims. *See, e.g., Williams,* 2018 WL 4735713 at *8 ("the Court concludes that Plaintiff's amended complaint fails to state a claim of race discrimination against [defendant] under the NYCHRL and NYSHRL because Plaintiff neglects to plead any facts from which the Court could infer her race or that race was a factor in any of the timely conduct alleged in her complaint.")

Even if Plaintiff's Amended Complaint could be read to allege that by virtue of her age she is in a protected class, simply being a member of a protected class, standing alone, is insufficient to rescue Plaintiff's claim. Plaintiff has not alleged a breach of the duty of fair representation due to her class status. And Plaintiff has not alleged that she was treated "less well" than other similar situated individual due to her protected class. Therefore, her NYSHRL and NYCHRL claims against the UFT fail.

## POINT VI

**PLAINTIFF FAILS TO STATE A CLAIM FOR PRIMA FACIE TORT SINCE SHE DID NOT PLAUSIBLY ALLEGE THE UFT ACTED WITH DISINTERESTED MALEVOLENCE OR THAT SHE SUFFERED SPECIAL DAMAGES**

As stated in Point IV, supra, Plaintiff's Seventh claim for relief for *prima facie* tort fails under the *Martin* rule. Further, Plaintiff failed to allege the other essential elements of prima facie tort. The requisite elements of prima face tort are "(1) the intentional infliction of harm, (2) which results in special damages, (3) without excuse or justification, (4) by an act or series of acts which would otherwise be lawful." *Friehofer v. Hearst Corp.*, 65 N.Y.2d 135, 142 (1985). Moreover, prima facie tort is not a catch-all alternative for every cause of action that cannot stand on its own legs. *Id.*

The intent requirement to be held liable for prima facie tort must amount to an "intent to cause harm." *Curiano v. Suozzi*, 63 N.Y.2d 113 (1984). There are two aspects to this requirement, the plaintiff i) first must "intentionally act" to cause harm, and ii) must do so with disinterested malevolence. *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333 (1983).

Aside from generally alleging *prima facie* tort, the Amended Complaint sets forth no allegations that the UFT intentionally caused any harm to Plaintiff, let alone that it acted with disinterested malevolence. Disinterested malevolence means "that the genesis which will make a

lawful act unlawful must be a malicious one mixed with any other and exclusively directed to injure and damage another." *Lindner*, 59 N.Y.2d at 333; *see also Wigdor v. SoulCycle, LLC,* 139 A.D.3d 613, 614 (1st Dep't 2016); *Schoolcraft v. City of New York*, 133 F.Supp.3d 563, 569 (S.D.N.Y. 2015). In other words, Plaintiff would have to plausibly allege that the UFT's actions were taken with the sole purpose of harming her. She has undeniably failed to do so.

The Amended Complaint further fails to allege any special damages attributable to any actions by the UFT. The injury required for special damages is "ordinarily to trade, occupation, professional reputation or property, and generally comprehends interference with some form of contractual relation." *Brandt v. Winchell*, 283 A.D. 338 (1st Dep't 1954). Suits failing to allege special damages with sufficient particularity should be dismissed. *See Freihofer*, 65 N.Y.2d at 143.

Therefore, in addition to Plaintiff's failure to satisfy the *Martin* rule, she has otherwise failed to plausibly allege a claim for *prima facie* tort.

**CONCLUSION**

Based upon the foregoing, the UFT respectfully request that the Complaint be dismissed as against it, with prejudice, and for such other and further relief deemed just and proper together with costs, attorneys' fees and disbursements.

Dated: New York, New York
      April 30, 2020

<div style="margin-left: 40%;">

Respectfully submitted,

ROBERT T. REILLY

By:    /s/ Michael J. Del Piano
        Michael J. Del Piano
        Rachel S. Paster
        Of Counsel
        52 Broadway, 9th Floor
        New York, New York 10004
        (212) 228-3382
        michael.delpiano@nysut.org
        rachel.paster@nysut.org
        *Attorney for Defendant*
        *United Federation of Teachers*

</div>