UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————————x

MICHELE VALVO,

                Plaintiff

                                    DOCKET NO. 1:19-cv-08341(JPO)

    -against-

THE DEPARTMENT OF EDUCATION OF THE CITY
OF NEW YORK; and THE UNITED FEDERATION OF
TEACHERS,

                Defendants

——————————————————————————————x


### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

D. Christopher Mason

Mason Law, PLLC

11 Broadway – Suite 615

New York, New York 10004

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                    3

PRELIMINARY STATEMENT                                                   6

STATEMENT OF FACTS                                                      13

ARGUMENT                                                                15

    POINT I: THE CONSTITUTION APPLIES TO PRIVATE ACTIONS UNDER
EXCEPTIONS TO THE STATE ACTION DOCTRINE

        (a) THE UFT MUST COMPLY WITH CONSTITUTIONAL RIGHTS
BY DINT OF THE PUBLIC FUNCTION EXCEPTION TO STATE
ACTION DOCTRINE                                                         15

        (b)THE UFT MUST COMPLY WITH CONSTITUTIONAL RIGHTS
BY DINT OF THE ENTANGLEMENT EXCEPTION TO STATE
DOCTRINE                                                                20

    POINT II: DEFENDANTS ACTED TOGETHER IN CONCLUDING THAT
PLAINTIFF WAS GUILTY OF CORPORAL PUNISHMENT WHEN THERE
WAS NO EVIDENCE AND SCARRING HER WITH STIGMA PLUS                       21

    CONCLUSION                                                        22

Adickes v. S.H. Kress &Co., 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) — 15

Armando v. Grounds, 766 F.3d 713, 719-20 (7th Cir. 2014) (citing Parrat v. Taylor, 451 U.S. 527 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)) — 15

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) — 5

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) — 5

Brentwood Academy v. Tennessee Secondary School Athletic Association (531 U.S. 288 (2001), pp. 9-13 — 18

Chemerinsky, "Rethinking State Action". 80 Nw. U. L. Rev. 503, 511-516 (1985)) — 17

Christophel v Kukulinsky, 61 F.3d 479. 485 (6th Cir. 2017) — 17

Conley v. Gibson, 355 U.S. 41, 45-46 (1957) — 12

Cunningham v Southlake Ctr. For Mental Health, Inc., 924 F.2d. 106, 107, 108 (7th Cir. 1991) — 15

511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 773 N.E.2d 496 (N.Y. 2002) — 10

Dalton v. Educational Testing Serv., 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (N.Y. 1995) — 10

Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) — 15

Evans v. Newton, 382 U.S. 296, 299, 301 — 16, 20

Frankini v. Landmark Constr. of Yonkers, Inc., 91 A.D.3d 593, 595, 937 N.Y.S.2d 80 (2d Dep't 2012) — 10

Fries v. Helsper, 146 F 3d 452, 457 (7th Cir. 1998) — 15

Hanania v Loren-Maltese, 212 F.3d 353, 356, (7th Cir. 2000) — 15

Hellenic American Neighborhood Action Comm. v. City of New York, 101 F.3d 877,881 (2d Cir.1996) (collecting cases), cert. denied, 521 U.S. 1140, 118 S. Ct. 15, 138 L. Ed. 2d 1048 (1997) — 21

Home Telephone and Telegraph Co. v Los Angeles, 227 U.S. 278 (1913) — 9

Hudson v. Palmer, 468 U.S. 517, 532, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984) — 21

Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351Lugar v. Edmondson Oil Co.,   16, 20
457 U.S. 922, 942, 102 S. Ct. 2744, 73 L.Ed.2d 482 (1982)

Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 71 L. Ed. 2d 265,102 S.   21
Ct.1148 (1982)

Marsh v Alabama (326 U.S. 501 (1946)   18

Matthews v Eldridge, 424 U.S. 319, 332 (19 76)   17

National Collegiate Athletic Assn. v. Tarkanian, 488 U.S. 179   17

Ochal v. Television Tech. Corp., 26 A.D.3d 575, 576, 809   10
N.Y.S.2d 604

Parratt v. Taylor, 451 U.S. 527, 541, 68 L. Ed. 2d 420, 101   21
S. Ct. 1908 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S.
327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986).

United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)   14

United States v. Price, 383 U.S. 787, 794 n. 7 1966)   18

Valmonte v Bane, 18 F.3d 992, 1000-1001 (2d Cir. 1994)   21

West v Atkins, 487 U.S. 42, 49-50, 108 S. Ct. 2250, 101 L.Ed.2d 40 (1988)   11

Wilson v Warren County, Illinois, 830 F. 3d 464   16
(7th Cir. 2016)

Statutes and Rules

| 18 USC §1961 et seq | 6 |
| 42 USC §1983 | 6, 10, 11, 12, 15, 16, 18 |
| New York Pattern Jury Instructions – Civil § 4.1 (2d ed. 2006) | 10 |
| Rule 12(b)(6) | 5 |

## PRELIMINARY STATEMENT

In March 2020 Plaintiff filed an Amended Complaint citing a Civil RICO enterprise involving the UFT and the NYC Department of Education as the perpetrators of the enterprise scheme. The business of fraud is a lucrative one, and both the UFT and the NYC DOE have profited from denying Plaintiff for the past eight years her due process rights as a full time paraprofessional, while manipulating student records and special education resources and teachers.

. To succeed on a RICO claim, a plaintiff must show:

- Criminal Activity. You must show that the defendant committed one of the enumerated RICO crimes, which include the broad crimes of mail and wire fraud. If you bring a claim on a fraud basis, however, the court will apply strict scrutiny.
- Pattern of Criminal Activity. One crime is not enough. You have to show a pattern of at least two crimes. A pattern requires the crimes be related in some way—same victim, same methods, same participants—or continuous, meaning it was conducted over at least a year.
- Within the Statute of Limitations. The Supreme Court held that RICO has a four-year statute of limitations, which begins tolling from the time the victim discovers his or her damages.

The criminal activity is the denial of substantive rights both to Plaintiff, by both the UFT and the NYC DOE, and to children in public schools who do not get the resources and services that they are mandated to receive on a consistent basis.

To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. A claim will have "facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." This is an action arising under 42 USC §1983, the Racketeer Influenced and Corrupt Organizations Act, 18 USC §1961 et seq, New York State Constitution Article 1, Section 6, New York State Executive Law (Human Rights Law) Section 290, et seq., Chapter I, Title 8 of the Administrative Code of the City of New York, Section 8-107(1)(a) (referred to as the Human Rights Law of the City of New York), asserting claims for violations of the foregoing statutes, including continually depriving the Plaintiff of property without the procedural due process guaranteed under the Fourteenth Amendment, retaliation for complaining thereof against the defendants, and for workplace harassment which resulted in a Stigma Plus stain on Plaintiff's career and life; State laws governing employment, seeking monetary and declaratory relief against Defendants for committing acts with the intent and for the purpose of depriving Plaintiff of property and liberty rights without the procedural due process guaranteed under the Fourteenth Amendment of the Constitution of the United States, and for refusing to or neglecting to prevent such deprivations and denials to Plaintiff.

Plaintiff was denied a fair arbitration hearing by her Union, the United Federation of Teachers (henceforth "UFT"), after she was accused of an act of misconduct by an anonymous person and the UFT did not investigate nor did they support her when she asked to have a hearing on the matter. Both the UFT and the New York City Department of Education cited Plaintiff for so-called "prior acts" of professional misconduct in order for the 2018 false allegation to finally terminate Plaintiff from her employment. The prior acts were just as erroneous as the 2018 claim, thus providing Plaintiff with a continuous false claims policy and practice against the Defendants as part of her RICO argument presented here.

The Fourteenth Amendment of the United States Constitution states that no state shall "deprive any person of life, liberty, or property, without due process of law." The intent of the Due Process Clause was to prevent states from using their coercive powers in an arbitrary or irrational manner to deny individuals of rights secured under the Constitution. A deprivation of these rights is protected by the federal civil rights statute, 42 U.S.C. § 1983, which provides a plaintiff with monetary relief. This section was originally enacted by Congress as section one of the Civil Rights Act of 1871. Under section 1983, a claim "must satisfy two requirements: (1) the conduct must be committed by a person acting under color of state law; and (2) the conduct must deprive the individual of a constitutional [or federal civil] right."

The gravamen of the Amended Complaint is the letter written and sent to Plaintiff by UFT Staff Director Leroy Barr dated April 18, 2019 wherein he re-stated the erroneous claims made by the NYC DOE alleged "witnesses" that Plaintiff had harmed Connor, an autistic student in her care at that moment. The allegation was completely false, yet Mr. Barr, speaking for the UFT, supported the erroneous claims of the New York City Department of Education ("NYC DOE) that Plaintiff had violated her professional duties and harmed Connor, then used these lies to deny Plaintiff's request for arbitration to get her job back. Mr. Barr was not in attendance at the pre-arbitration nearing and did no research into the validity or not of Plaintiff's facts.

The RICO continuity requirement is satisfied in this case, as shown by the so-called "prior misconduct" by Plaintiff brought up by Defendants to deny her an arbitration on her termination. Page 8-9 in Plaintiff's Amended Complaint:

1. "The alleged prior acts of poor performance should not have been included in Plaintiff's employment file and should not have been considered in connection with the decision to discontinue Plaintiff. The following information was given to the UFT by Plaintiff:

"The letters which you claim are in my file are either not there, or untrue and unseen by me, meaning they are not valid."

1. June 22, 2012 Allegation: Professional Misconduct/Theft of Service Result: Letter to File. I never laid eyes on this letter to file until I received my termination packet. This letter was never in my file nor was it ever signed by me which proves I never saw it, and if I was made aware of it and refused to sign it the Principal would have had to make note stating I refused to sign.

2. August 2012, Allegation: Violation of Chancellors Regulation C-604 Result Letter to File. When interviewed and in the letter itself I said I was not aware I was violating any regulations. This letter was removed in September 2015 by me since the three year period was up.

3. December 2016 Allegation: Verbal Abuse Result: Letter to File this letter was for allegations made against me for verbal abuse toward a student on December 8 2016. January 3 2017 was the second time Principal Proscia placed this letter in my file. The first time was on December 14, 2016. I filed a Step 1 grievance on December 16, 2016 and the Step 1 grievance was held on the same day. I was not present. It was done over the phone between my Union Representative Sean Rotkowitz at the main office on Amboy Rd, SI and Principal Proscia. On December 18, 2016 Principal Proscia removed the letter from my file, calling my grievance "moot".

4. June 2017 Allegation: Poor Judgement Result: Letter to file for being on my cell phone. I was not on my cell phone as I explained in a written statement when accused. I also requested Principle Proscia attach my statement to the letter. He proceeded to put in my file anyway.

5. December 2017 Allegation: 1:1 child walked out of building to his mother during dismissal and Ms.Valvo was unaware he was missing. Result: letter dated 1/5/2018. This was not a letter in my file. Principal Proscias exact words to me when I was called into his office on 1/4/18 were "this meeting was being held without a Chapter leader since no disciplinary actions are being taken". He stated this was going to be "A LETTER TO POCKETBOOK" since he had to memorialize it. Principal Proscia stated he believed it was an honest mistake and that no one was purposely neglecting their duties. The incident also involved the 3 other adults in the classroom. They were the teacher MS. MacDonald, Formula Para Kelly Lopez and 1:1 Para Sara Alhurani. We were all called in to his office individually then as a group to discuss the incident. Then on 1/5/2018 he put a letter in my mailbox (Ms. Macdonald also received one) stating he and Assistant Principal Renee Mazza meet with me individually and then again with Ms. MacDonald, Kelly Lopez and Sara Alhurani. He states "We discussed an incident where my 1:1 student

walked out of the class without my knowledge during dismissal time and dismissed himself to his mother (quite different from allegations stated above). Then he had 3 bullet points about my role and responsibilities as a Paraprofessional and 1 stating I need to revisit the Win-Win agreement with the teacher. Not making light of the situation, but not only did he get past the four adults in the classroom he also got past all the adults in the hallway, lobby where by the way the Assistant Principal is also stationed at dismissal plus there is a security guard  and then  out the front door where other teachers were dismissing their students one by one

6. January 2018  Allegation: Corpral Punishment  Results: Letter to File Dated 2/9/2018 Stating I'm Terminated effective close of business 2/13/2018. On the first page second paragraph of termination letter and again on the  Employee Disciplinary History Page last entry dated  January 2018, the Principal repeats himself twice when he states:

> "Allegation: parent coordinator received an anonymous call from a parent that her child reported that in the cafeteria a paraprofessional had another child by the arm, grabbed/yanked his arms, wrapped her arms around him and spun him around and pulled him to get him in his seat. If I was doing all this why didn't someone step in?  Why wasn't security called?  Additionally, Janie Swincicki's (parent co-ordinator) did NOT write those words in her statement. She spoke to the  annonymous caller.  She states the anonymous called said   her child told her a lady at lunch grabbed a little boy's arms and held them over his head and pushed him to sit down.  Indeed, if the kindergarten student saw this, how do they know what lady he/she is referring to?  There are a many women going in and out of that lunchroom (Paras,teachers, aids, lunch ladys, PTA mothers).  What is the absolute truth here is, I was not the person who did this.

The truth of the matter is that at all times relevant to the claims made in the Amended Complaint the Plaintiff was a state actor working with the NYC DOE under color of law in conformity with her official duties as a public school paraprofessional. A government employee is acting under color of law and as a state actor, if he or she is acting in an official capacity, even if the conduct is not authorized by state law. Home Telephone and Telegraph Co. v Los Angeles, 227 U.S. 278 (1913).  Her responsibility under the circumstances of this instant complaint was to protect the rights of children, including a boy with autism (Connor).

Plaintiff worked for the NYC DOE from 2002 until 2018, and during this time she paid dues as a member of the UFT. She also earned an Initial General Education Early Childhood Birth-2nd Grade Certificate and an Initial Students With Disabilities Early Childhood Birth-2nd grade Certificate in 2012. Her many years of full-time service with the NYC DOE gave her certain rights of employment implied by her lengthy service. The implied contract rule is recognized in New York State. Her membership in the UFT and her payment of dues for 16 years afforded her certain substantive as well as implied rights to continued employment.

In New York, within every contract is an implied covenant of good faith and fair dealing. The covenant is breached when a party acts in a manner that deprives the other party of the right to receive benefits under their agreement. The covenant encompasses any promises which a reasonable person in the position of the promisee would be justified in understanding were included. See 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 773 N.E.2d 496 (N.Y. 2002); Dalton v. Educational Testing Serv., 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (N.Y. 1995); Frankini v. Landmark Constr. of Yonkers, Inc., 91 A.D.3d 593, 595, 937 N.Y.S.2d 80 (2d Dep't 2012); Ochal v. Television Tech. Corp., 26 A.D.3d 575, 576, 809 N.Y.S.2d 604; Leon C. Lazer, et al., New York Pattern Jury Instructions – Civil § 4.1 (2d ed. 2006).

While working with children with Individualized Education Plans (IEPs), which are contracts for money with the Federal government pursuant to the Individuals With Disabilities Education Act ("IDEA"), Plaintiff was diligent in protecting the rights of those children in her care. The stated purpose of the IDEA is:

- to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet

their unique needs and prepare them for further education, employment, and independent living;

- to ensure that the rights of children with disabilities and parents of such children are protected;
- to assist States, localities, educational service agencies, and Federal agencies to provide for the education of all children with disabilities;
- to assist States in the implementation of a statewide, comprehensive, coordinated, multidisciplinary, interagency system of early intervention services for infants and toddlers with disabilities and their families;
- to ensure that educators and parents have the necessary tools to improve educational results for children with disabilities by supporting system improvement activities; coordinated research and personnel preparation; coordinated technical assistance, dissemination, and support; and technology development and media services;
- to assess, and ensure the effectiveness of, efforts to educate children with disabilities.

Each IEP has an attached amount of money to the given to the child, sometimes reaching into the hundreds of thousands of dollars.

Plaintiff, as a paraprofessional and certified teacher for many years, was given her right to interact with children with special needs by the state of New York and the Federal government. The NYC DOE and UFT trashed her Certification as a full-time teacher without any reason or evidence of wrong-doing. Thus Defendants deprived Plaintiff of her property right without due process, while at the same time interfering with the relationship between the school and the child, to the child's detriment. It is firmly established that a defendant in a §1983 suit acts under color of law when he abuses the position given to him by the state. See West v Atkins, 487 U.S. 42, 49-50, 108 S. Ct. 2250, 101 L.Ed.2d 40 (1988).

The UFT worked so closely with the NYC Department of Education (NYC DOE) on this termination that there was a conspiracy of harm under color of state law which denied Plaintiff her rights to her 16-year employment. Plaintiff, she argues here, has a property right to her job due to the facts that Connor is a very young autistic child whose care is mandated by an

Individualized Education Plan ("IEP") and as such, Plaintiff is given statutory powers to assure that Connor's rights to resources and services were provided to him. Plaintiff was acting as a state actor and as a representative for the Federal Government in protecting the rights of Connor when she was falsely accused. Therefore, Plaintiff was denied her job which she argues had implied state law contractual rights as well as government promises to support her as long as she was acting on behalf of the Federal Guidelines for children with disabilities and in particular, Connor.

The actions of the defendants that have created a "stigma plus" for the plaintiff provides a sound basis for this action pursuant to 42 U.S.C. § 1983 ("Section 1983").

## STATEMENT OF FACTS

"[ A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief " Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

After receiving information about the allegation of corporal punishment allegedly occurring on January 25, 2018, without giving  Plaintiff  an opportunity to say what happened, the Department of Education of the City of New York ("NYCDOE") placed her name and social security number into the "Problem code" database at the Office of Personnel Investigations, a division of the Monitoring Unit in the Department's Human Resources. A "red flag" was put onto Plaintiff's fingerprints and file and released to various officials at the United Federation of Teachers ("UFT") who did not assist her in removing such damaging information and thus harming her reputation without cause.

Upon information and belief, at the time of Plaintiff's discontinuance from employment with the NYCDOE, she was assigned a "problem code" . As an individual with a "problem code" Plaintiff is prohibited from employment by the NYCDOE at any district with the City of New York. At no time was Plaintiff given any information on how to remove her name from this "Code"/ineligible list.

As a result of the action of the NYCDOE Plaintiff has been improperly terminated from her position, and due to the "problem code" her New York City License has been constructively terminated and her New York State certificates have suffered a diminishment in value. There is no adequate remedy in the Collective Bargaining Agreement ("CBA") with Defendant UFT and no procedure to remove the flag from Plaintiff's fingerprints. Therefore she must bear this stigma forever, according to the so-called "investigator" at the Department's Office of Personnel Investigations ("OPI").

Plaintiff is left without any options to obtain relief from the damage created by her former employer and Union after false and damaging information was used against her. Plaintiff had never received prior notice of any "report" placing her on a "Problem Code/Ineligible List" and was not guilty of the alleged actions which placed her on this list in the first place.

Plaintiff filed a timely Notice of Claim in June 2018 which was never resolved. Plaintiff was deposed at a 50-H on September 26, 2018. She then sought arbitration under the procedures allowable by the UFT and her CBA, and her Grievance and request for arbitration was initially denied by the UFT Grievance chair Ellen Procida in a letter dated October 12, 2018.

Plaintiff then appealed the decision of the Grievance office and asked to appear before the UFT Administrative Committee ("AD COM") where she presented her statement of innocence and asked for arbitration of the wrongful termination.

In a letter to Plaintiff dated April 18, 2019 UFT Chief of Staff Leroy Barr issued a decision for the UFT that Plaintiff would not be approved for arbitration on her employment and her innocence of the charge of corporal punishment of Connor. In his letter Mr. Barr cited the false claims made by the NYCDOE and quoted Plaintiff as saying what happened, but he made serious errors in his review of the statement. Mr. Barr was not at the hearing and did not hear what Plaintiff said to the AD COM. His conclusion was based upon "prior bad acts" which were baseless, and current corporal punishment allegations which were false. Therefore Barr's conclusion to deny arbitration violated a standard of due process owed to the Plaintiff by the UFT and implied by contract.

On September 19, 2019 Plaintiff filed the instant lawsuit against her employer and Union and filed her Amended Complaint March 2020. She seeks nominal and compensatory damages to the extent allowable by law, and declaratory relief regarding the unconstitutional acts and practices of Defendants.

## **ARGUMENT**

POINT I: THE CONSTITUTION APPLIES TO PRIVATE ACTIONS UNDER EXCEPTIONS TO THE STATE ACTION DOCTRINE

An individual act under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).

By dint of her Certificate as a permanent teacher in a public school and her position as a paraprofessional for 16 years working with children with disabilities, Plaintiff exercised her responsibilities pursuant to state law. (West, 487 U.S. at 49-50, 1108 S. Ct. 2250. Plaintiff's employer, the NYC DOE, was acting under color of state law when Plaintiff exercised her rights to her continued employment and had done so for 16 years.

A private party is considered a state actor if the alleged deprivation was "caused by the exercise of some right or privilege created by the [s]tate or by a rule of conduct imposed by the state or by a person for whom the [s]tate is responsible."  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 942, 102 S. Ct. 2744, 73 L.Ed.2d 482 (1982).

To succeed in a §1983 claim, plaintiffs must prove (1) the deprivation of a right secured by the Constitution or federal law and (2) that defendants were acting under color of state law. Armando v. Grounds, 766 F.3d 713, 719-20 (7th Cir. 2014) (citing Parrat v. Taylor, 451 U.S. 527 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

For a private actor (Barr) to act under color of state law, he must have "had a 'meeting of the minds' and thus reached an understanding" with a state actor to deny plaintiffs a constitutional right. In the case at bar here, Barr acted under color of state law when he was a willing participant in joint action with the state and its agent in terminating Plaintiff without an arbitration on her Grievance and on the basis of false claims. See Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Plaintiff showed evidence of a concerted effort between a state actor, the NYC DOE and Barr. Fries v. Helsper, 146 F 3d 452, 457 (7th Cir. 1998). Adickes v. S.H. Kress&Co., 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); see also Hanania v Loren-Maltese, 212 F.3d 353, 356, (7th Cir. 2000)(requiring a showing of a "concerted effort between" a private actor and a state actor and that a state actor and private actor

"reached an understanding to deprive the plaintiff of her constitutional rights"); (Cunningham v Southlake Ctr. For Mental Health, Inc., 924 F.2d. 106, 107 (7th Cir. 1991) ("A requirement of the joint action charge…is that both public and private actors share a common, unconstitutional goal.").

Because §1983 allows a private actor to be sued as if it were the state and makes state actors potentially liable as well, the state actor must share the private actor's unconstitutional goal in order for a state actor to be acting under color of state law. In other words, "a private actor…..cannot unilaterally convert a state actor's legitimate activity into an illegal act, conferring upon both constitutional accountability on itself and liability on the state". Cunningham, 924 F2d. at 108.  Wilson  v Warren County, Illinois, 830 F. 3d 464 (7th Cir. 2016). At the time Plaintiff was deprived of her teaching certificate/property and career rights at her public school, the need for clearly established law was satisfied with reasonable clarity to show Defendants that their conduct was unlawful. Although Plaintiff did not have a so-called "tenured" position, she had the trappings of tenure: Initial Certificates to teach, 16 years on the job (6 years working after the certification in 2012), working with children and IEPs. Plaintiff had tried several times in the past to get a tenured position at her school but was turned down. State action may be found only if there is such a "close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351. No one fact is a necessary condition for finding state action, nor is any set of circumstances sufficient, for there may be some countervailing reason against attributing activity to the government. The facts that can bear on an attribution's fairness — e.g., a nominally private entity may be a state actor when it is entwined with governmental policies or when government is  entwined in its management or

control  Evans v. Newton, 382 U.S. 296, 299, 301 — unequivocally show that a legal entity's character is determined neither by its expressly private characterization in statutory law, nor by the law's failure to acknowledge its inseparability from recognized government officials or agencies. In National Collegiate Athletic Assn. v. Tarkanian, 488 U.S. 179, this Court anticipated that state action could be found when there is public entwinement in the management or control of an organization whose member public schools are all within a single State. Pp. 6-9. Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Matthews v Eldridge, 424 U.S. 319, 332  (1976).  In a procedural-due-process claim, "the deprivation of property by state action is not itself unconstitutional; 'what is unconstitutional is the deprivation of such an interest without due process of law." Christophel v Kukulinsky,  61 F.3d 479.  485  (6th Cir.  2017).

 While the text of the Constitution seems to limit its application to just the government, the question arises as to whether the government's failure to stop private infringements of rights is itself a constitutional violation. For example, does the government allow a deprivation of liberty in violation of the Fourteenth Amendment if it permits private employees to fire their employees for speech and associational activities?

 Because the state has the power to stop the private infringement of individual rights, its failure to do so constitutes a state decision to permit the violations. Thus it is analytically possible to conceptualize any private infringement of constitutional values as a result of government inaction.

Historically, the state action doctrine made sense because it was thought that the common law protected individuals from private interference of their rights (Erwin Chemerinsky, "Rethinking State Action". 80 Nw. U. L. Rev. 503, 511-516 (1985))

If a person is employed by the government and acting as a government officer, there is no doubt that there is state action and the Constitution applies. A Section 1983 requires that the action be "under color of law". The Supreme Court has said that this is the same inquiry as to whether there is state action. (United States v. Price, 383 U.S. 787, 794 n. 7 1966).

(a)THE UFT MUST COMPLY WITH PLAINTIFF'S CONSTITUTIONAL RIGHTS BY DINT OF THE PUBLIC FUNCTION EXCEPTION TO STATE ACTION DOCTRINE

There are exceptions to the state action requirement – situations where private conduct has to comply with the Constitution, or when private action might be deemed that of the state. The public functions exception holds that private conduct must comply with the Constitution if it involves a task that has been traditionally, exclusively done by the government.

In Marsh v Alabama (326 U.S. 501 (1946)) the Supreme Court ruled that running a city is a public function, and therefore it must be done in compliance with the Constitution, whether by the government or a private entity. The Court said that "[t]he more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the Constitutional and statutory rights of those who use it." (Id. at 506)

Education has long been a province of the government, and here the Plaintiff argues that public schools, with public funding and some of the children receiving public funds for their IEPs, are examples of a public function exception where the running and/or regulation of these schools have traditionally been done exclusively by the government. This is not true for private or religious institutions.

In Brentwood Academy v. Tennessee Secondary School Athletic Association(531 U.S. 288 (2001), pp. 9-13)., the Court found that a private entity regulating high school athletics was a state actor based on the government's "entwinement" with its activities. Additionally, "The Association's nominally private character is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to it. To the extent of 84% of its membership, the Association is an organization of public schools represented by their officials acting in their official capacity to provide an integral element of secondary public schooling, interscholastic athletics. There would be no recognizable Association without the public school officials, who overwhelmingly determine and perform all but the Association's purely ministerial acts. Only the 16% minority of private school memberships keeps the entwinement of the Association and public schools from being total and their identities totally indistinguishable. To complement the entwinement from the bottom up, the State has provided entwinement from the top down: State Board members sit ex officio on the Association's governing bodies and Association employees participate in the state retirement system. Entwinement to the degree shown here requires that the Association be charged with a public character and judged by constitutional standards.

(b)THE UFT MUST COMPLY WITH PLAINTIFF'S CONSTITUTIONAL RIGHTS BY DINT OF THE ENTANGLEMENT EXCEPTION TO STATE ACTION DOCTRINE

The second major exception to the state action doctrine is termed the "entanglement exception". The Court is most likely to find state action based on entanglement if it can be shown that the government's purpose was to undermine protection of constitutional rights or if the government is facilitating private conduct that otherwise would not occur. To find state action

based on entanglement there must be some government action that can be identified as affirmatively authorizing, encouraging, or facilitating private conduct that violates the Constitution.

State action may be found only if there is such a "close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351. No one fact is a necessary condition for finding state action, nor is any set of circumstances sufficient, for there may be some countervailing reason against attributing activity to the government. The facts that can bear on an attribution's fairness — e.g., a nominally private entity may be a state actor when it is entwined with governmental policies or when government is  entwined in its management or control, Evans v. Newton, 382 U.S. 296, 299, 301 — unequivocally show that a legal entity's character is determined neither by its expressly private characterization in statutory law, nor by the law's failure to acknowledge its inseparability from recognized government officials or agencies.

Plaintiff argues that her school's administration authorized and encouraged the termination of personnel without adequate investigation into the facts or person(s) behind the claims, and trashed Plaintiff's 16-year career with a permanent black mark on her record without adequate protections. This is the Problem Code.

POINT II: DEFENDANTS ACTED TOGETHER INCONCLUDING THAT PLAINTIFF WAS GUILTY OF CORPORAL PUNISHMENT WHEN THERE WAS NO EVIDENCE AND SCARRING HER WITH STIGMA PLUS

Where a state imposes on an employee a stigma or other disability that forecloses her freedom to take advantage of other employment opportunities, then, because

deprivation not only of present government employment, but also of future opportunity for government employment, is no small injury, the state is required by procedural due process to accord to the teacher notice and an opportunity to refute the charges before state officials. Valmonte v Bane, 18 F.3d 992, 1000-1001 (2d Cir. 1994).

Where the denial of due process is in the context of an established state process- as it is in this case - then the existence of a post deprivation remedy is not relevant and does not defeat a due process claim. Hellenic American Neighborhood Action Comm. v. City of New York, 101 F.3d 877,881 (2d Cir.1996)(collecting cases), cert. denied, 521 U.S. 1140, 118 S. Ct. 15, 138 L. Ed. 2d 1048(1997). In Hellenic, The Court of Appeals stated:

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. See Hudson v. Palmer, 468 U.S. 517, 532, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984); Parratt v. Taylor, 451 U.S. 527, 541, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986).

In the latter case, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post deprivation remedy. Hudson v. Palmer, 468 U.S. at 531, 533. When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post deprivation procedures will not, ipso facto, satisfy due process. Id. at 532; Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 71 L. Ed. 2d 265,102 S. Ct.1148 (1982). Hellenic American Neighborhood Action Comm. v. City of New York, supra, 101 F.3d at 880.

## CONCLUSION

The complaint states valid causes of action for a Civil RICO enterprise scheme. The Defendants' Motions to Dismiss must be denied and the case moved forward.

Dated:

                            _____

                               D. Christopher Mason