UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

MICHELE VALVO,

Plaintiff,

- against -

THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK; and THE UNITED FEDERATION OF TEACHERS,

Defendants.

-----------------------------------------------------------------X

1:19-cv-08341(JPO)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNITED FEDERATION OF TEACHERS' MOTION TO DISMISS THE AMENDED COMPLAINT**

ROBERT T. REILLY
52 Broadway, 9th Floor
New York, New York 10004-1614
(212) 228-3382

*Attorney for Defendant United Federation of Teachers*

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

POINT I .......... 2

PLAINTIFF'S CLAIMS AGAINST THE UFT UNDER 42 U.S.C. § 1983 FAIL BECAUSE THE UFT DID NOT DEPRIVE PLAINTIFF OF ANY CONSTITUTIONAL RIGHTS, WAS NOT A STATE ACTOR, AND DID NOT ACT UNDER THE COLOR OF STATE LAW .......... 2

A. The UFT Performed a Private Function When Representing Plaintiff .......... 4

B. Plaintiff's "Concerted Effort" and "Entanglement" Arguments Do Not Plausibly Render the UFT a State Actor .......... 5

POINT II .......... 7

PLAINTIFF'S PURPORTED CLAIM FOR BREACH OF IMPLIED COVENANT FAILS BECAUSE SUCH CLAIM MAY ONLY BE CONSTRUED AS ONE FOR BREACH OF THE DUTY OF FAIR REPRESENTATION .......... 7

POINT III .......... 8

PLAINTIFF HAS NO STIGMA-PLUS CLAIM AGAINST THE UFT .......... 8

CONCLUSION .......... 10

**Cases**

*Ahmad v. White Plains City Sch. Dist.*, 18-CV-3416 (KMK), 2019 WL 3202747 (S.D.N.Y. Jul. 16, 2019) .......... 4

*Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423 (1st Dep't 2010) .......... 7

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2001) .......... 4

*Ciambriello v. Cnty. of Nassau*, 292 F.3d 307 (2d Cir. 2002) .......... 3, 4

*Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) .......... 3

*Dee v. Rakower*, 112 A.D.3d 204 (2nd Dep't 2013) .......... 8

*Evans v. Newton*, 382 U.S. 296 (1966) .......... 6

*Guttilla v. City of New York*, 14-CV-156 (JPO), 2015 WL 437405 (S.D.N.Y. Feb. 3, 2015).... 3, 4

*Jackson v. Metropolitan Edison Co.*, 419 US. 391 (1974) .......... 6

*Jacobs v. Mostow*, 271 Fed. Appx. 85 (2d Cir. 2008) .......... 3, 4

*Malcom v. Honeoye Falls-Lima Educ. Ass'n*, 678 F.Supp.2d 100 (W.D.N.Y. 2010) .......... 4

*Marsh v. Alabama*, 326 U.S. 501 (1946) .......... 4

*Martin v. Curran*, 303 N.Y. 276 (1951) .......... 7

*McGovern v. Local 456 I.B.T.,* 107 F.Supp.2d 311 (S.D.N.Y. 2000).......... 4

*Segal v. City of New York*, 459 F.3d 207 (2d Cir. 2006) .......... 9

*Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120 (2d Cir. 1998).......... 3

**Statutes**

42 U.S.C. § 1983 .......... 1, 2, 3, 8

Fed. R. Civ. Pro. Rule 12(b)(1).......... 1

Fed. R. Civ. Pro. Rule 12(b)(6).......... 1

N.Y. C.P.L.R. § 217(2)(a).......... 7

Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §§ 1961, *et seq.* ("RICO") .......... 1

## PRELIMINARY STATEMENT

Plaintiff filed a meritless lawsuit against the UFT, which should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and (6).[1] Ms. Valvo blames the UFT because the DOE terminated her employment for alleged corporal punishment and verbal abuse toward an autistic elementary school student. The DOE undisputedly and unilaterally terminated Plaintiff's employment and license and placed a "problem code" and "red flag" on her file. Without any factual or legal basis, Plaintiff alleges claims for relief under 42 U.S.C. § 1983, Civil Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §§ 1961, *et seq.* ("RICO"), and various state law causes of action. The UFT moved to dismiss the Amended Complaint. Despite Plaintiff's numerous claims for relief, the Amended Complaint is essentially a non-meritorious breach of the duty of fair representation claim against the UFT. As repeatedly held by the Second Circuit, and for the reasons set forth in the UFT's Opening Brief, this Court lacks subject matter jurisdiction over claims by public employees against their unions for breach of the duty of fair representation. Plaintiff's attempt to dress up baseless Section 1983 and RICO claims to ground subject matter jurisdiction should be dismissed.

Plaintiff failed to respond to virtually all of the dispositive arguments raised by the UFT, which this Court should deem uncontested. Specifically, Plaintiff failed to: (1) address her failure to plead any elements of a RICO claim (Fourth Claim for Relief); (2) address this Court's lack of subject matter jurisdiction over duty of fair representation claims by public employees against their unions (Third and Sixth Claims for Relief); (3) identify any facts to plausibly support the claim that the UFT discriminated against her because of her membership in any protected class under

---

[1] Further references to Michele Valvo will appear as ("Plaintiff" or "Ms. Valvo"), United Federation of Teachers ("UFT"), and New York City Department of Education ("DOE").

the New York State Human Rights Law and/or New York City Human Rights Law (Fifth Claim for Relief); and (4) address the untimeliness and implausibility of her claims for breach of the duty of fair representation, breach of contract, and *prima face tort* under New York law (Third, Sixth, and Seventh Claims for Relief).

Instead, Plaintiff's opposition focused on lip service to her claim for breach of contract (Sixth Claim for Relief, although the legal theory offered in her Response Brief is entirely different from the cause of action asserted in the Amended Complaint) and, ostensibly, her claims under 42 U.S.C. § 1983 (First and Second Claims for Relief). Indeed, where Plaintiff attempted to address the UFT's motion to dismiss, her arguments stated general statements of law wholly unrelated to the UFT's arguments or adopted new theories entirely different from the allegations in the Amended Complaint. For example, Plaintiff addressed the UFT's argument that it was not a state actor by asserting that Plaintiff herself was a state actor. Plaintiff also for the first time raised a conclusory legal argument of a conspiracy between the UFT and DOE without a single factual allegation. Plaintiff's asserted justifications for each of these claims, no matter how generously the Court reads them, simply fail to state a claim.

## ARGUMENT

## POINT I

### PLAINTIFF'S CLAIMS AGAINST THE UFT UNDER 42 U.S.C. § 1983 FAIL BECAUSE THE UFT DID NOT DEPRIVE PLAINTIFF OF ANY CONSTITUTIONAL RIGHTS, WAS NOT A STATE ACTOR, AND DID NOT ACT UNDER THE COLOR OF STATE LAW

Plaintiff has not alleged any plausible claim against the UFT under 42 U.S.C. § 1983, which requires a showing that (1) the challenged conduct was "committed by a person acting under the color of state law," and (2) that such conduct deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Cornejo v. Bell*, 592

F.3d 121, 127 (2d Cir. 2010). The DOE undisputedly terminated Plaintiff's employment and New York City licenses, and placed a "problem code" or "red flag" on her file. *See* Plaintiff's Response Brief ("Pl. Resp.") at 12. Plaintiff has not alleged the UFT's involvement in any of those decisions. Even assuming Plaintiff had constitutionally protected interests in those items, any deprivation was caused by the DOE.

Plaintiff's sole allegation against the UFT is that it failed to pursue arbitration under the UFT and DOE collective bargaining agreement ("CBA") related to her termination. Plaintiff conceded the CBA has no remedy to remove the "problem code." Pl. Resp. at 12. The CBA does not provide arbitration for every termination. *See* Del Piano Decl. Ex. "C", Article 22, at p. 39. Therefore, Plaintiff did not have an absolute right to have her grievance taken to arbitration. *See Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 128 (2d Cir. 1998). Plaintiff's 42 U.S.C. § 1983 Claims for Relief against the UFT should be dismissed.[2]

Moreover, Plaintiff did not allege any plausible claim that the UFT was a state actor or acted under the color of state law. Labor unions are generally not state actors. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). In *Guttilla v. City of New York*, 14-CV-156 (JPO), 2015 WL 437405 at *5 (S.D.N.Y. Feb. 3, 2015), this Court held the UFT is not a state actor, nor did it act under the color of state law when representing members. Indeed, a union does not become a state actor simply by representing public employees. *Id.*; *see also Jacobs v. Mostow*, 271 Fed. Appx. 85, 88 (2d Cir. 2008) (dismissing § 1983 claim against statewide teachers' union for not being a state actor); *Ahmad v. White Plains City Sch. Dist.*, 18-CV-3416 (KMK), 2019 WL

---

[2] Plaintiff's First Amended Complaint asserts the Second Claim for Relief under 42 U.S.C. § 1983 against "All Defendants," although it appears to relate solely to the DOE. Regardless, it fails for the same reason as the First Claim for Relief.

3202747 at *15 (S.D.N.Y. Jul. 16, 2019); *Malcom v. Honeoye Falls-Lima Educ. Ass'n*, 678 F.Supp.2d 100, 107 (W.D.N.Y. 2010).

Plaintiff advanced the "public function" and "entanglement" exceptions to exempt the UFT from the state action doctrine. Plaintiff asserted the UFT and DOE acted in concert with each other to deprive her of constitutional rights. Each argument lacks legal and factual merit.

### A. The UFT Performed a Private Function When Representing Plaintiff

As noted in *Guttilla*, *Ciambriello*, *Ahmad*, *Jacobs*, *Malcom*, and many other cases in this Circuit, labor unions are not state actors solely because they represent public employees. Neither *Marsh v. Alabama*, 326 U.S. 501 (1946) nor *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2001) support Plaintiff's argument that the UFT performed a public function to except it from the state action doctrine. In *Marsh*, the Supreme Court held that First and Fourteenth Amendment protections applied to privately-owned streets of a company town. In *Brentwood*, the Supreme Court held that a private not-for-profit athletic association that regulates interscholastic sports for Tennessee public and private high schools performed a public function owning to the pervasive entwinement of state school officials in the association's structure. In both *Marsh* and *Brentwood*, the private actors demonstrated characteristics generally occupied by the state. Plaintiff has not and cannot make the same allegations for the UFT. To the contrary, labor unions advance the private interests of their members, even when such members are public employees. *See Ciambriello*, 292 F.3d at 324; *McGovern v. Local 456, I.B.T.,* 107 F.Supp.2d 311 (S.D.N.Y. 2000) (union not acting under color of state law because it had an "adversarial role in relation to the state by nature of the fact that it was the representative" of county employees); *Guttilla*, 2015 WL 437405 at *6.

**B. Plaintiff's "Concerted Effort" and "Entanglement" Arguments Do Not Plausibly Render the UFT a State Actor**

In her opposition, Plaintiff raises two additional arguments for the first time, based upon the general theory that where the government is so deeply entwined in a private actor's activity, such private actor may be treated as a state actor. Pl. Resp. at 20. The two arguments she advances are: First, that the UFT and the DOE engaged in a "concerted effort" to deprive her of her rights; and second, that the UFT's "entanglement" with the DOE rendered the UFT essentially inseparable from the DOE.

These seemingly separate arguments are grounded in the same essential claim – that the UFT and the DOE worked together to deprive Plaintiff of her rights. As far as specifics go, Plaintiff does not offer much. Plaintiff alleged a concerted effort between LeRoy Barr (a UFT employee, who is not a party to the lawsuit) and the DOE. Beyond this bare claim, the Amended Complaint does not allege any concerted agreement between the UFT and DOE, nor offer any facts that would tend to show such agreement. Plaintiff's unsworn opposition states "Barr acted under color of state law when he was a willing participant in joint action with the state and its agent in terminating plaintiff without an arbitration on her Grievance and on the basis of false claims…Plaintiff showed evidence of a concerted effort between a state actor, the NYC DOE and Barr." Pl. Resp. at 15. Plaintiff's argument lacks merit.

The Amended Complaint contains no plausible allegation of an agreement between UFT with the DOE to deprive Plaintiff of anything. On the contrary, the UFT represented Plaintiff against the DOE in the initial disciplinary meeting, *see* Del Piano Decl. Ex. "D", at the Step 1 Grievance, *see* Del Piano Decl. Exs. "E" and "F", and the Step 2 Grievance, *see* Del Piano Decl. at Exs. "G" and "H". Barr's April 18, 2019 letter concerns the decision of the UFT's Administrative Committee ("Ad Com") to not pursue Plaintiff's grievance to arbitration. Del

Piano Decl. Ex. "K". Plaintiff did not allege any facts to demonstrate Ad Com had any agreement with the DOE regarding Plaintiff's employment. Indeed, Ad Com's decision occurred more than a year after the DOE terminated Plaintiff's employment. *See id.*; *see also*, Del Piano Decl. Ex. "D". Furthermore, Barr's April 18, 2019 letter informed Plaintiff of Ad Com's decision that the UFT could not successfully pursue Plaintiff's grievance in arbitration; it contains no plausible inference that Barr had any discussion or agreement whatsoever with the DOE.

Likewise, Plaintiff has not alleged any facts supporting her "entanglement" claim. The sole fact Plaintiff's Response Brief points to with regard to this claim is her assertion that "her school's administration authorized and encouraged the termination of personnel. . . and trashed Plaintiff's 16-year career with a permanent black mark on her record. . . This is the Problem Code." Pl. Resp. at 20. Neither Plaintiff's Amended Complaint nor Plaintiff's Response Brief provides any explanation whatsoever as to why acts of the DOE should be imputed to the UFT.

The cases cited by Plaintiff with regard to her "entanglement" claim are equally unavailing. In *Jackson v. Metropolitan Edison Co.*, 419 US. 391 (1974), the Supreme Court declined to find that a private utility company had such a "close nexus" with the state of Pennsylvania that is essentially acted as a state actor when it terminated an individual's electric service. In that case, the Court considered, among other things, the fact that the utility had what amounted nearly to a monopoly over the provision of utility services which was closely regulated by the state, but nevertheless rejected the petitioner's claim that the utility was a state actor or providing a public function. Plaintiff has offered no facts that would support her bald assertion that the DOE and UFT have a relationship closer than that of the State of Pennsylvania and Metropolitan Edison.

Plaintiff likewise cites *Evans v. Newton*, 382 U.S. 296, 299 (1966), which is equally unavailing. In that case, the Supreme Court held that a public park, long operated by the city of

Macon, Georgia, but which was owned by a separate entity, could not be operated on a segregated basis. The Supreme Court's reasoning was abundantly clear: it was a public park and "the predominant character and purpose of this park are municipal." 382 U.S. at 302. Plaintiff makes no argument concerning any DOE involvement of the operation of the UFT, or any municipal or governmental function performed by the UFT.

## POINT II

## PLAINTIFF'S PURPORTED CLAIM FOR BREACH OF IMPLIED COVENANT FAILS BECAUSE SUCH CLAIM MAY ONLY BE CONSTRUED AS ONE FOR BREACH OF THE DUTY OF FAIR REPRESENTATION

Plaintiff attempts, however half-heartedly, to revive her breach of contract claim, now asserting that there is an "implied contract" which created rights of employment "by her lengthy service" and that the "implied covenant of good faith and fair dealing" has been violated.[3] Pl. Resp. at 10. As set forth in the UFT's Opening Brief at pp. 16-17, claims by a member against a Union for breach of contract are properly construed as claims of breach of the duty of fair representation,[4] over which this Court does not have subject matter jurisdiction. Moreover, Plaintiff failed to address how her breach of contract claim under New York law is not time-barred under N.Y. C.P.L.R. § 217(2)(a)'s four month statute of limitations or fatally insufficient under the *Martin v. Curran*, 303 N.Y. 276 (1951) requirements. *See* UFT Opening Brief at pp. 17-20.

---

[3] It is unclear from Plaintiff's Brief whether Plaintiff is referring here to a contract between herself and the DOE, or a contract between herself and the UFT. Plaintiff's Amended Complaint references "an employment agreement between the Plaintiff and her Union." Plaintiff was not, and does not allege that she was, ever an employee of the UFT such that she would have been party to any such agreement.

[4] Plaintiff cited no authority, and the UFT is aware of none, to apply the implied covenant doctrine in a claim against a union arising under a CBA. In any event, a claim that a defendant has breached the implied covenant of good faith and fair dealing is properly dismissed as duplicative of the breach-of-contract claim, when both claims arise from the same facts. *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce,* 70 A.D.3d 423, 426 (1st Dep't 2010). Plaintiff has not cited any facts related to this claim beyond those set forth in the Sixth Cause of Action, and indeed a claim under the implied covenant of good faith is nowhere referenced in the Amended Complaint.

To the extent Plaintiff alleged the UFT breached an agreement that exists as a result of Plaintiff's membership in the Union, Plaintiff has failed to identify any such agreement, point to a breach of said agreement, or delineate any harm suffered as a result of that breach.[5]

**POINT III**

**PLAINTIFF HAS NO STIGMA-PLUS CLAIM AGAINST THE UFT**

The Amended Complaint's Second Claim for Relief and Plaintiff's Response Brief (p. 20) refer to a "Stigma Plus" claim. The Amended Complaint purports to be against all defendants; however, it only refers to the DOE's unilateral action to terminate Plaintiff's New York City licenses, and Plaintiff's alleged attendant reputational loss. C.¶41. Plaintiff's Response Brief, in a point heading, states "Defendants Acted Together (sic) Inconcluding That Plaintiff Was Guilty of Corporal Punishment When There Was No Evidence And Scarring Her With Stigma Plus." Pl. Resp. at 20. As discussed in Point II(b), *supra*, Plaintiff failed to allege any facts to support a concerted activity action under 42 U.S.C. § 1983. Plaintiff's own allegations clearly and unambiguously state that the DOE terminated her New York City licenses. *See* C.¶41 "While acting under the color of state law, the NYCDOE constructively terminated Plaintiff's New York City License without providing procedural due process before the deprivation of property"; *see also*, Pl. Resp. at 13. "As a result of the NYCDOE Plaintiff has been improperly terminated from her position, and due to the 'problem code' her New York City License has been constructively terminated and her New York State certificates have suffered a diminishment in value." Plaintiff's

---

[5] UFT takes no position as to whether Plaintiff has been harmed by an action or inaction of the DOE. However, to prevail on a claim against the UFT, Plaintiff would have to prove that the damages are attributable to the UFT, not merely that she suffered damage. *See, e.g., Dee v. Rakower*, 112 A.D.3d 204, 208–09, (2nd Dept. 2013) (damages must result from breach).

Response Brief also alleged the DOE stigmatized her when it "flagged" her file with a "problem code". Pl. Resp. at 13. Since Plaintiff has not plausibly attributed any of these actions to the UFT, any stigma plus claim against the UFT should be dismissed.

Even assuming Plaintiff could assert a "Stigma Plus" claim against the DOE, she could never file any such claim against the UFT. It is well established that in order to state a "Stigma Plus" claim, a plaintiff must satisfy three elements: (1) the government made stigmatizing statements about the plaintiff; (2) the stigmatizing statements were made public, and (3) the stigmatizing statements were made at the time of plaintiff's dismissal. *Segal v. City of New York*, 459 F.3d 207, 212–13 (2d Cir. 2006). The UFT is not the government, made none of the alleged stigmatizing statements against Plaintiff, and did not make any stigmatizing statements about Plaintiff at her dismissal. Indeed, the UFT argued in Plaintiff's favor at two different grievance hearings after her dismissal. Moreover, Plaintiff failed to allege the UFT made any statement respecting her New York City License or any "problem code" or "flag" on her file. Thus, Plaintiff did not plausibly allege any "Stigma Plus" claim against the UFT.

## CONCLUSION

Based upon the foregoing, and for the reasons previously stated in the UFT's Opening Brief, the UFT respectfully request that the Amended Complaint be dismissed as against it, with prejudice, and for such other and further relief deemed just and proper together with costs, attorneys' fees and disbursements.

Dated: New York, New York
July 8, 2020

Respectfully submitted,

ROBERT T. REILLY

By: /s/ Michael J. Del Piano

Michael J. Del Piano
Rachel S. Paster
Of Counsel
52 Broadway, 9th Floor
New York, New York 10004
(212) 228-3382
michael.delpiano@nysut.org
rachel.paster@nysut.org
*Attorney for Defendant*
*United Federation of Teachers*