UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

MICHELE VALVO,

                           Plaintiff,

                -v-

DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK, *et al.*,

                           Defendants.

19-CV-8341 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

        Plaintiff Michele Valvo brings this action against Defendants Department of Education of the City of New York ("DOE") and United Federation of Teachers ("UFT"), claiming that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), violated her Fourteenth Amendment procedural due process rights, and violated several provisions of New York State and City law in relation to her termination by DOE. Defendants now move to dismiss the Complaint for lack of jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and (6). For the reasons that follow, Defendant's motion is granted.

**I.    Background**

        The following facts are drawn from the Complaint and documents referenced therein, and they are assumed true for purposes of this motion.

        Plaintiff is the holder of a New York State Teachers Certification and License and a professional certification for working with autistic children. (Dkt. No. 17 ("Compl.") ¶ 13.) Plaintiff began working for DOE as a paraprofessional educator in 2002, and she continued in that role when she transferred to P.S. 23 in Staten Island in 2007. (Compl. ¶ 15.) Plaintiff alleges that, up until her termination, she "was never given any discipline for any misconduct of

1

any kind" and instead "was sought out as a mentor for children who were the most vulnerable." (Compl. ¶ 16.)

Plaintiff's termination was triggered by an anonymous report regarding her supposed conduct on January 25, 2018. (Compl. ¶ 18.) The report described "that in the cafeteria a paraprofessional had [a] child by the arm, grabbed/yanked his arms, wrapped her arms around him and spun him around and pulled him to get him in his seat." (Compl. ¶ 27.) The report also described the paraprofessional as verbally abusive. (Compl. ¶ 18.)

Plaintiff explains that, on January 25, 2018, she escorted a male student who "was having an emotional breakdown" to the P.S. 23 cafeteria. (*Id.*) When Plaintiff asked the student to sit at a table in the cafeteria, he "started to scream and cry . . . while lifting his arms up and yell[ing] 'NO.'" (*Id.*) Plaintiff repeated her request that the student sit down, after which the student sat, lifted his legs, and let Plaintiff "guide[]" them under the table. (*Id.*) Plaintiff recalls that she spoke to the student "in a gentle voice" and that her efforts led the student to stop crying. (*Id.*)

On January 26, 2018, the principal of P.S. 23 summoned Plaintiff to his office to inform her that she would be suspended without pay, pending an investigation into the report against her. (Compl. ¶ 17.) That same day, Plaintiff filed a "Step 1" grievance regarding her suspension. (*Id.*) On February 9, 2018, her Step 1 grievance was denied. (Compl. ¶ 20.) The investigation against Plaintiff proceeded, and Plaintiff was afforded a disciplinary hearing at which she was presented with the charges and evidence against her. (Compl. ¶ 21.) Plaintiff was afforded an opportunity to respond, and she provided her own written statement describing the January 25, 2018 incident. (*Id.*)

On February 13, 2018, the principal of P.S. 23 informed Plaintiff that the investigation confirmed the report against her, and the principal terminated her accordingly. (Compl. ¶ 22.)

2

As a function of her termination, Plaintiff was placed into a "problem code" database that rendered her ineligible for further employment with DOE. (Compl. ¶ 3.) Again, Plaintiff filed a Step 1 grievance in which she claimed that she had been improperly terminated. (Compl. ¶ 23; Dkt. No. 26-5.) On February 26, 2018, Plaintiff, her representative from UFT, the principal of P.S. 23, and an assistant principal of P.S. 23 attended a proceeding to discuss the grievance. (Compl. ¶ 23; Dkt. No. 26-6.) Two days later, the principal of P.S. 23 denied Plaintiff's Step 1 grievance, concluding that Plaintiff's "termination was proper and warranted" because she had "yelled and screamed at a mostly nonverbal student with autism, pulled him by his arm, forcibly pushed him into the seat at the lunch table and then shoved his legs under the table and continued to belittle and embarrass him." (Compl. ¶ 23; Dkt. No. 26-5.)

On March 1, 2018, UFT filed a "Step 2" grievance on Plaintiff's behalf. (Dkt. No. 26-7.) In relation to the grievance, Plaintiff, her UFT representative, the principal of P.S. 23, and a representative of the superintendant for P.S. 23 attended a proceeding before a representative of DOE Chancellor Richard Carranza. (Compl. ¶ 25; Dkt. No. 26-8.) At the proceeding, Plaintiff and her UFT representative challenged the factual basis for Plaintiff's termination. (Dkt. No. 26-8.) The principal of P.S. 23 countered by listing the steps he had taken to investigate the report against Plaintiff and by describing Plaintiff's "history of poor professional performance and other acts of professional misconduct." (*Id.*; Compl. ¶¶ 26–27.) On April 26, 2018, Chancellor Carranza's representative decided that "[t]he decision to discharge [Plaintiff] was based on good and sufficient reason" and that the "termination should stand." (Dkt. No. 26-8; Compl. ¶ 26.) Chancellor Carranza endorsed the decision. (Dkt. No. 26-8; Compl. ¶ 26.)

Shortly after the denial of her Step 2 grievance, Plaintiff requested that UFT pursue a "Step 3" grievance and arbitration on her behalf. (Compl. ¶ 28.) On October 12, 2018, UFT

3

formally declined.  (*Id.*)  Plaintiff appealed UFT's decision, had an appeal meeting on October 18, 2018, and lost her appeal on December 5, 2018.  (Compl. ¶ 29.)  On February 25, 2019, Plaintiff appealed the denial of her appeal.  (Compl. ¶ 30.)  In a letter that Plaintiff describes as "shocking" (*id.*), UFT recounted the evidence against Plaintiff, including her own admission that she spoke loudly to the student and "le[d] him by the arm," holding him "tightly" to prevent him from running away (Dkt. No. 26-11).  UFT upheld its decision not to proceed to arbitration on behalf of Plaintiff.  (Compl. ¶ 30.)

Plaintiff did not pursue an Article 78 proceeding in New York State courts.  Instead, on June 8, 2018, she served a notice of claim on DOE that raised "due process, civil rights, defamation and harassment" claims.  (Dkt. No. 24-7.)  On September 7, 2019, Plaintiff filed the Complaint in this case, which she amended on March 10, 2020.  (Dkt. No. 1; Compl.)  On April 29, 2020, and April 30, 2020, DOE and UFT moved to dismiss Plaintiff's claims.  (Dkt. No. 21; Dkt. No. 25).

**II.     Legal Standards**

The Court must dismiss a claim *sua sponte* or under Rule 12(b)(1) when the Court "lacks the statutory or constitutional power to adjudicate it."  *Cordlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (citation omitted).  In considering a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the Court "must accept as true all material factual allegations in the complaint" or application, but it cannot "draw inferences . . . favorable to plaintiffs" or petitioners.  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

4

570 (2007)).  In considering the motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).  The Court may also consider "documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court must draw "all inferences in the light most favorable to the nonmoving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

**III.    Discussion**

Plaintiff brings two types of federal claims against DOE and UFT: civil RICO claims and constitutional due process claims.  She additionally brings a bevy of state constitutional, statutory, and common law claims.  Defendants contest each of Plaintiff's claims on the merits.  Separately, UFT challenges the Court's jurisdiction over several of Plaintiff's state law claims.  The Court considers Plaintiff's claims in turn.

**A.    RICO Claims**

RICO renders it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  By its plain terms, RICO cannot be violated in the absence of "two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  RICO defines "person" broadly, including "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).  Courts have interpreted an "enterprise" to be "a group of persons associated together for a common purpose of engaging in a course of conduct, the existence of which is proven by

evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (internal quotation marks and citation omitted).

The Court agrees with Plaintiff that DOE and UFT may be persons, within RICO's broad definition. *See In re CitiSource, Inc. Sec. Litig.*, 694 F. Supp. 1069, 1079 (S.D.N.Y. 1988) ("The term 'person' . . . is literally broad enough to include municipal [entities]."); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (acknowledging that business and corporate entities may be persons). Plaintiff fails, however, to allege a RICO enterprise with which DOE and UFT associated. The Complaint does not suggest that DOE and UFT formed or were members of an unnamed third-party organization. There is no allegation that DOE and UFT functioned as a single or continuing unit. Moreover, "every court in this Circuit that has considered the issue has held that a municipality . . . is incapable of forming the requisite criminal intent for RICO liability." *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 457 (S.D.N.Y. 1998) (collecting cases). DOE's inability to "share in the unlawful purpose" of an organization weighs heavily against, and may categorically preclude, its participation in a RICO enterprise with UFT. *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 80 (E.D.N.Y. 2011). UFT could not, of course, form a RICO enterprise by its lonesome.

Because the Complaint does not allege a RICO enterprise, Plaintiff's RICO claims against DOE and UFT must be dismissed.

### B.     Due Process Claims

Plaintiff's constitutional due process claims, brought under 42 U.S.C. § 1983, are no more successful. Ostensibly, Plaintiff challenges the process DOE afforded her when it terminated her employment and placed her in the problem-code database. Separately, she

challenges the process UFT afforded her in relation to her termination.  None of these claims is colorable.

### 1. Plaintiff's Termination and Placement in the Problem-Code Database

Plaintiff was terminated and placed in the problem-code database pursuant to "established state procedures" that involved a pre-termination hearing and post-termination appeals. *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996).  Accordingly, the Court assesses her due process claim by applying "the familiar two-step inquiry" in which it determines "(1) whether [Plaintiff] possessed a liberty or property interest and, if so, (2) what process [she] was due before [she] could be deprived of that interest." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002); *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880 ("When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process.").

DOE argues that Plaintiff has no property interest at stake.  It contends that Plaintiff was a non-tenured paraprofessional who "functioned as an 'at-will' employee under New York law." (Dkt. No. 23 at 12.)  This factual contention finds no support in the Complaint.  Indeed, it is contradicted by a letter to Plaintiff from UFT that the Complaint relies on and that the Court may therefore consider.  (Compl. ¶ 30; Dkt. No. 26-11.)  In that letter, UFT informed Plaintiff of "[t]he standard for termination . . . set forth in Article 23 of the Para Professional contract . . . that the discharge of an employee should be based on good and sufficient reason." (Dkt. No. 26-11.)  It is well-established that the "independent source of a property interest [can be] a . . . contract." *Stein v. Bd. of City of New York, Bureau of Pupil Transp.*, 792 F.3d 13, 17 (2d Cir. 1986).  Where a plaintiff's "contract . . . provided that [the plaintiff] would not be discharged except for 'good cause,' . . . the state cannot transgress on the claim of entitlement to continued

7

employment without due process of law." *Id*. The Complaint and other documents in Plaintiff's possession thus establish her constitutionally protected property interest in continued employment.

DOE also argues that Plaintiff has no liberty interest at stake, despite Plaintiff's allegation that her placement in the problem-code database damaged her reputation. On this score, DOE is correct. "A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause." *Patterson v. City of Utica*, 370 F.3d 322, 329–30 (2d Cir. 2004). Although reputational harm can implicate constitutional due process "when an alleged government defamation occurs in the course of dismissal from government employment," such a circumstance arises only when the supposedly "stigmatizing statements were made public." *Id*. at 330. As courts in this circuit have held, DOE's placement of a former employee in its internal problem-code database is insufficiently "public to future potential employers" to create a liberty interest and support a due process claim. *Arroyo v. Dep't of Educ. of City of New York*, No. 19-cv-7416, 2020 WL 4570380, at *14 (S.D.N.Y. Aug. 6, 2020); *Green v. Dep't of Educ. of City of New York*, No. 18-cv-10817, 2019 WL 3432306, at *11 (S.D.N.Y. July 31, 2019).

The question, then, is whether Plaintiff was afforded sufficient process in relation to her termination. She undoubtedly was. Prior to termination, a "public employee is entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Plaintiff herself alleges that, at an in-person hearing before her termination, she "was presented with the charges against her and permitted to review the written statements for the individuals interviewed during the investigation" of the January 25, 2018 incident. (Compl.

¶ 21.) She alleges that she "also provided her own written statement regarding the incident." (*Id.*) Plaintiff does not identify any deficiencies with this pre-deprivation process, and neither does the Court.

Nor does the Court identify any deficiencies with the post-deprivation process available to Plaintiff. Union-backed grievance procedures "are routinely . . . held to provide adequate post-deprivation process." *O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005). To the extent that grievance procedures "provid[e] for a hearing to contest a challenged employment decision," *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003), and do not "exclud[e] [the plaintiff] from the proceedings," *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 320 (2d Cir. 2002), they satisfy the demands of the Due Process Clause. DOE's citation to Plaintiff's "history of poor professional performance" at the Step 2 grievance hearing is not to the contrary. (Compl. ¶¶ 26–27.) Plaintiff and her UFT representative were both present, in person, for the Step 2 grievance hearing and were given an opportunity to address this additional evidence against Plaintiff. Moreover, the Step 2 grievance was, in essence, an appeal of the Step 1 grievance. The Second Circuit has noted that there is "no constitutional right to review or appeal after a . . . hearing which satisfied the essential requirements of due process." *Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972).

Plaintiff received adequate pre- and post-deprivation process with respect to her termination. She has not established a liberty interest with respect to her placement in DOE's problem-code database. Plaintiff's due process claims against DOE fail.

### 2. UFT's Involvement in the Termination

Plaintiff claims that UFT, in addition to DOE, denied her due process in relation to her termination. The Complaint, however, does not allege that UFT employed Plaintiff, terminated her, or interfered with her ability to participate in any constitutionally mandated proceeding.

9

Instead, the Complaint and the grievance-related documents on which it relies show UFT advocating on behalf of Plaintiff, urging DOE not to terminate her.

From the Complaint, Plaintiff's primary concern about UFT appears to be its refusal to initiate a Step 3 grievance on her behalf.  But nothing in the Constitution required UFT, acting pursuant to whatever private agreement it may have had with Plaintiff, to initiate a Step 3 grievance.  *See United States v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1296 (2d Cir. 1991) (holding that a dispute between a union and union members sounded in contract and did not implicate constitutional rights).  Furthermore, the Court rejects any insinuation that UFT's decision not to pursue a Step 3 grievance indicates a conspiracy between UFT and DOE.  *See Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.")  Plaintiff's due process claims against UFT fail.

### C.     Plaintiff's State and City Law Claims

DOE and UFT contest the Court's jurisdiction over and the merits of Plaintiff's claims brought under New York State and City law.  The Court need not address their specific arguments, as a court "may decline to exercise supplemental jurisdiction over" state claims on various grounds, including that "the district court has dismissed all claims over which it has original jurisdiction" — here, the federal claims.  28 U.S.C. § 1367(c)(3); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.").  This case

is at an early stage of litigation, and the Court declines to exercise supplemental jurisdiction over Plaintiff's State and City claims. These claims are dismissed without prejudice.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to close the motions at Docket Numbers 21 and 25 and to close this case.

SO ORDERED.

Dated: March 18, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge